1998 OK 18

**Donald R. STEPP, Appellant,**

v.

**Judith K. STEPP, Appellee.**

No. 87,648.

Supreme Court of Oklahoma.

March 10, 1998.

Rita A. Foster, Tulsa, for appellant.

James R. Gotwals, Tulsa, for appellee.

WATT, Justice.

### FACTS AND PROCEDURAL BACKGROUND

¶1 On October 31, 1995, the trial court entered a consent decree of divorce to plaintiff, Donald R. Stepp, and defendant, Judith K. Stepp. No children were born of the Stepps' marriage. The consent decree approved and incorporated a settlement agreement, which contained the following language:

> The parties hereto desire to set out specific debts that each will assume and pay and hold the other party harmless and free and clear of all liens, claims, and encumbrances of any kind.

The Stepps had incurred more than $60,-000.00 in credit card indebtedness during their marriage. Under the settlement agreement Donald Stepp assumed $32,700.00, and Judith Stepp $31,000.00, of the parties' debts. There are indications in the record that the total credit card indebtedness was as much as $68,000.00, but we will use the figures recited in the settlement agreement.

¶2 After Donald Stepp filed the divorce action Judith Stepp suggested to him that they discharge their credit card debts in bankruptcy court but Donald Stepp declined, saying that he did not want to injure his credit rating by taking bankruptcy. Judith Stepp acquiesced, and the parties then made the settlement agreement containing the language set out in the preceding paragraph. When the Stepps signed the settlement agreement and the trial court entered the consent decree Donald Stepp was represented by counsel, but Judith Stepp was not.

¶ 3 Shortly after the trial court entered the consent decree, Judith Stepp's father lent her $30,000.00 from his retirement funds, which she used to pay her share of the parties' debts. Judith Stepp gave a promissory note to her father for the $30,000.00, which bore interest at seven per-cent per-annum. Later, on November 19, 1995, Donald Stepp called Judith Stepp and told her that he had consulted a bankruptcy lawyer and was considering discharging his portion of the credit card debts, despite the fact that Judith Stepp had already paid half of the total debt and remained personally liable to the credit card companies for the portion of the debt Donald Stepp had agreed to pay. Although Donald Stepp made payments on the credit card indebtedness prior to the divorce, he made only two small payments thereafter, until ordered to do so by the trial court.

¶ 4 After Donald Stepp told Judith Stepp that he was contemplating bankruptcy, Judith Stepp hired a lawyer. On November 30, 1995, less than thirty days after the consent decree was entered, Judith Stepp's counsel filed a Motion to Vacate Correct or Modify Judgment under 12 O.S.1991 §§ 1031 and 1031.1,[1] in which Judith Stepp asked the trial court to correct the divorce decree. She asked for the addition of a provision in the decree declaring that the payment of the credit card indebtedness called for in the settlement agreement and approved in the consent decree was "in the nature of support and non-dischargeable in any parties' subsequent bankruptcy." On March 19, 1996, while her motion to vacate correct or modify was pending, Judith Stepp filed a contempt citation against Donald Stepp based on Donald Stepp's willful failure to keep payments current on the portion of the debt he had assumed under the settlement agreement and consent decree.

¶ 5 The trial court held an evidentiary hearing on Judith Stepp's motion to vacate correct or modify the divorce decree and on her contempt citation on April 17, 1996. The trial court granted Judith Stepp's motion in an order filed May 16, 1996. After finding the facts as recited above, the trial court's order stated:

> The Court is convinced that each party relied on the fact that the debts awarded to the other party would be paid and would not be discharged in bankruptcy. Further, the Court is convinced that the settlement agreement was founded on this understanding.

Based on its findings, the trial court modified the divorce decree by adding the following provision:

> Each party agrees to designate the debt obligations as support obligations and not dischargeable in bankruptcy.

¶ 6 With respect to the contempt citation the trial court found that Donald Stepp had paid only two small payments on his share of the debt since the divorce, that he could afford to make payments on the debt, and was in willful indirect contempt of court. Based on these findings the trial court ordered:

> [That Donald Stepp] make arrangements with the credit card companies to contact him instead of [Judith Stepp], and to make enough of a payment towards each bill to stop collection efforts directed toward [Judith Stepp].

The trial court held several additional hearings at which Donald Stepp showed sufficient compliance with the trial court's order to make payments on the credit card debt to avoid incarceration for contempt.

### ISSUES

¶ 7 I Did the trial court correctly grant Judith Stepp's motion to modify the divorce decree?

---

1. Title 12 O.S.1997 Supp. § 1031.1 provides in material part:

    A. A court may correct, open, modify or vacate a judgment, decree or appealable order on its own initiative not later than thirty (30) days after the judgment, decree or appealable order ... has been filed.

The 1997 amendment to § 1031.1 was passed after the trial court's order modifying the decree here, but the amendment did not affect the applicability of the foregoing language to this appeal.

II Did the trial court correctly use its contempt power as a sanction to require Donald Stepp to make payments on the credit card debt?

II Is Judith Stepp entitled to an appeal related attorneys' fee?

We answer "yes" to Issues I and II, and "no" to Issue III.

## I.

■ ¶ 8 Donald Stepp claims that *Fowler v. Goldfeder*, 1966 OK 156, 418 P.2d 317, stands for the proposition that a validly entered judgment cannot be disturbed unless fraud inhered in the judgment, and that because there was no finding of fraud by the trial court, the trial court erred in modifying the divorce decree. We agree that the trial court did not find fraud. We disagree that *Fowler* applies here. In *Fowler* a party who had filed a motion for new trial 79 days after judgment had been entered, and a motion to vacate the judgment more than seven months after the judgment was entered, was required to prove fraud under 12 O.S.1991 § 1031 Fourth.[2]

¶ 9 Here Judith Stepp filed her motion to vacate within 30 days of the date the divorce decree was entered. Thus, she was entitled to rely on 12 O.S.Supp.1997 § 1031.1, which, as discussed above, authorizes trial courts to alter, amend, or vacate judgments on their own initiative within 30 days of the entry of the judgment. Because she filed her motion to vacate within 30 days of the judgment, Judith Stepp was not bound by the limitations of § 1031. In *Schepp v. Hess*, 1989 OK 28 ¶ 7, 770 P.2d 34, we held that trial courts acting under § 1031.1 retain "plenary control over their terminal decisions." Under § 1031.1 trial judges enjoy " 'a very wide and extended discretion' that has been described as 'almost unlimited,' " *Schepp* at ¶ 9, quoting from *Morgan v. Phillips Petroleum*, 1949 OK ——, 202 Okla. 181, 212 P.2d 663.

¶ 10 In the present appeal, the Court of Civil Appeals held that a consent decree may not be modified, even during the time when the court has plenary power over its judgments, absent a finding of fraud. For this proposition the Court of Civil Appeals relied on *McEntire v. McEntire*, 706 S.W.2d 347 (Tex.App.1986).

¶ 11 We find *McEntire* inapposite to this appeal. In *McEntire* the trial court modified a consent decree of divorce to include $2,000.00 in temporary support, and a $1,135.50 attorneys' fee that had been called for in a temporary order, but were unpaid when the divorce decree was entered. Neither the parties' settlement agreement nor the consent decree upon which it was based required these amounts to be paid. Under these circumstances, the Texas Court of Appeals held that the trial court erred because it improperly entered what was ostensibly an agreed judgment adjudicating a matter to which the parties had not agreed.[3]

¶ 12 In the present appeal the trial court found, with ample record support, that "each party relied on the fact that the debts awarded to the other party would be paid and would not be discharged in bankruptcy." Given this finding, we believe that the trial court's use of the term "modify" in its 1031.1 order, while not incorrect, was less descriptive than would have been the term "correct." The settlement agreement expressly provided that each of the Stepps "will assume and pay and hold the other party harmless and free and clear of all liens, claims, and encumbrances of, any kind." Thus, the trial court in its 1031.1 order actually did no more than correct the terms of the consent decree to more accurately reflect what was always the agreement of the parties: that neither would discharge in bankruptcy the portion of the credit card debt he assumed.

---

**2.** Title 12 O.S.1991 § 1031 provides in material part:

The district court shall have power to vacate or modify its own judgments or orders within the times prescribed hereafter:

. . .

Fourth. For fraud, practiced by the successful party, in obtaining the judgment or order.

**3.** In his answer to Judith Stepp's petition for certiorari, Donald Stepp relies on *Milner v. Littlejohn*, 126 N.C.App. 184, 484 S.E.2d 453, 456 (1997). There the court held that a consent judgment based on a tentative agreement, to which the wife had objected was void because there had been no consent. Clearly, *Milner* is inapplicable here.

¶ 13 As the Stepps were jointly and severally liable on the credit card debt, the only way in which the settlement agreement could be given full force and effect after Judith Stepp paid off her half of the indebtedness, was to prohibit Donald Stepp from discharging his half in bankruptcy. If Donald Stepp were allowed to do so Judith Stepp would be placed in the untenable—and unfair—position of being put at risk of having to either pay Donald Stepp's half of the debt or take bankruptcy, despite having already paid her half. The trial court correctly designated the debt payments as support alimony in order to implement the parties' agreement. The trial court's correction order did not change the agreement of the parties, it merely clarified it.

## II.

¶ 14 Donald Stepp claims that the trial court impermissibly held him in contempt of court, in violation of Okla. Const Art. II, § 13.[4] He also contends that he cannot be deprived of his right to bankruptcy protection by the trial court's order. We disagree on both counts. A promise to one's spouse to treat a spousal obligation as non-dischargeable does not violate federal law.

15 Punishing an ordinary judgment debtor for contempt does violate the constitutional prohibition against imprisonment for debt. Here, however, the obligation that Donald Stepp was held in contempt for failing to pay was in the nature of a support obligation. "Disobedience of an order to pay alimony in a divorce proceeding constitutes indirect contempt of court." *Sommer v. Sommer,* 1997 OK 123 ¶ 8, 947 P.2d 512, 514. In *Johnson v. Johnson,* 1969 OK 142, 460 P.2d 954, we held that the trial court had properly held plaintiff husband in contempt for failing to pay payments to his ex-wife called for in the divorce decree. We so held on the ground that the payments the husband had failed to make were in the

nature of support alimony. We also held in *Johnson* at ¶ 6, that "Alimony may not be discharged in Bankruptcy."

¶ 16 Support alimony "remains the obligation of a bankrupt, notwithstanding his discharge." *Turman v. Turman,* 1968 OK 33 ¶ 6, 438 P.2d 488, quoting from *Battles v. Battles,* 1952 OK ——, 205 Okla. 587, 239 P.2d 794. Thus, the trial court's order stating that Donald Stepp's portion of the credit card debt was not dischargeable in bankruptcy was appropriate.

¶ 17 Support obligations imposed by divorce decrees are not dischargeable under federal bankruptcy laws, 11 U.S.C. § 523(a)(5). It is the prerogative of the Bankruptcy Court to determine whether an obligation called for in a settlement agreement was for support or was part of a property division agreement, but "In determining dischargeability under § 523(a), the initial inquiry is the intent of the parties at the time they entered into their agreement." *Sylvester v. Sylvester,* 865 F.2d 1164, 1165 (10th Cir.1989). The trial court's order here merely made clear the parties agreement that Donald Stepp's obligation to pay his share of the credit card debt was a support obligation, and, therefore, not dischargeable under the bankruptcy laws.

## III.

¶ 18 Judith Stepp has moved for appeal related attorneys' fees under 12 O.S.Supp.1997 § 696.4.C, which provides that an application for attorney's fees for services performed on appeal shall be made to and decided by the appellate court.[5] Thus, we must decide whether appeal related attorneys' fees are appropriate here. We hold that they are not.

¶ 19 In domestic matters "Counsel fee allowances [under 43 O.S.Supp. 1997 § 110] never depend on one's status as

---

4. Okla. Const Art. II § 13 provides:
   Imprisonment for debt is prohibited, except for the non-payment of fines and penalties imposed for the violation of law.

5. 12 O.S.Supp.1997 § 696.4.C provides in material part:

An application for attorney's fees for services performed on appeal shall be made to the appellate court.... The appellate court shall decide whether to award attorney's fees for services on appeal....

prevailing party in the case, but may be granted only to that litigant who qualifies for the added benefit by the mandated process of judicial balancing of the equities." *Stork v. Stork,* 1995 OK 61 ¶ 18, 898 P.2d 732. Where there are "no compelling or overriding equitable considerations in favor of either litigant ... each party shall bear its own counsel-fee and other litigation expenses incurred in the appeal or certiorari process." *Stork* at ¶ 19.

¶ 20 We find no compelling equities in favor of either party here. Donald Stepp's appeal, while unsuccessful, was neither frivolous nor lacking in merit. Further, Judith Stepp's income is significantly greater than is Donald Stepp's. Donald Stepp's current financial circumstances will not allow him to both keep current his share of the credit card debt and pay Judith Stepp an appeal related attorneys' fee. For the foregoing reasons it is the order of the Court that the parties shall bear their own attorneys' fees and other appeal based expenses.

CERTIORARI PREVIOUSLY GRANTED, COURT OF CIVIL APPEALS OPINION VACATED, JUDGMENT OF THE TRIAL COURT AFFIRMED, JUDITH STEPP'S APPLICATION FOR AN APPEAL RELATED ATTORNEYS' FEE DENIED

¶ 21 KAUGER, C.J., SUMMERS, V.C.J., HODGES, LAVENDER, OPALA, ALMA WILSON and WATT, JJ.—concur.

¶ 22 SIMMS, J.—concurs in judgment.

¶ 23 HARGRAVE, J.—concurs in result.

