2009 OK CIV APP 44

Allen Eugene BUFFALO,
Plaintiff/Appellee,

v.

Kimberley Renea BUFFALO,
Defendant/Appellant.

No. 105,124.

Court of Civil Appeals of Oklahoma,
Division No. 3.

April 10, 2009.

Chris D. Jones, Durant, Oklahoma, and Thomas Neil Lynn, III, Oklahoma City, Oklahoma, for Appellant.

D. Michael Haggerty, II, Durant, Oklahoma, for Appellee.

LARRY JOPLIN, Judge.

¶ 1 Defendant/Appellant, Kimberley Renea Buffalo (Mother), seeks review of the trial court's order granting the motion to modify of Plaintiff/Appellee, Allen Eugene Buffalo (Father), thereby changing custody of the parties' minor child from Mother to Father.

In this appeal, Mother complains Father failed to prove the requisite material change of conditions, and the trial court erred in changing custody based solely on the expressed preference of the child, then only ten years old.

¶ 2 Mother and Father divorced in March 1999. One child resulted from the marriage, C.B. In the divorce decree, Mother was given custody of the child and Father was given standard visitation. Father attempted to modify the custody arrangement in 2001, but the court order noted there had been no substantial change in circumstance and the custodial arrangement remained in effect. Father petitioned the court again to modify custody in 2007, asking for sole custody of his son and again alleged substantial, material and permanent change of circumstances that warranted modification, including such things as poor school performance and physical abuse of C.B. by his older sibling.

¶ 3 After a hearing at which the trial court met with C.B. on his tenth birthday, in chambers, with a court reporter present, the trial court sustained Father's motion to modify custody, subject to Mother's rights of reasonable visitation. Mother was also ordered to pay child support to Father. The trial court's September 14, 2007 order specifically stated:

> The evidence presented by the Plaintiff, Allen Eugene Buffalo, aside from the testimony of the minor child, does not support a permanent, substantial and material change of circumstance such as would warrant a change of custody.

The order cited *Nelson v. Nelson*, 2004 OK CIV APP 6, 83 P.3d 911, noting the court gave significant weight to the child's preference in this particular case.

¶ 4 The appellate court will not disturb the trial court's judgment regarding custody absent an abuse of discretion or a finding that the decision is clearly contrary to the weight of the evidence. *Daniel v. Daniel*, 2001 OK 117, ¶ 21, 42 P.3d 863, 871. For the reasons stated, the trial court's order granting Father's motion to modify custody is reversed and this cause remanded.

¶ 5 First, a modification of custody requires proof of a change in the custodial circumstances or the revelation of new information that was unknown at the time of the last order.[1] *Gibbons v. Gibbons*, 1968 OK 77, 442 P.2d 482, 485. Second, the applicant must demonstrate the change in circumstances is material, permanent and substantial and affects the child's welfare to a substantial and material extent. *Id.* at 485–86. Third, the applicant must show the child would be substantially better off as to his "temporal, mental and moral welfare" if his custody arrangement was changed. *Id.* at 485.

¶ 6 The substantial hurdles for the applicant in his (or her) attempt to modify custody is premised on the overarching goal that judicial intervention in post-divorce decision making should be limited and "[o]nce the decree of dissolution is entered, a trial court's involvement in decision-making for the family is minimized." *Kaiser v. Kaiser*, 2001 OK 30, ¶ 34–35, 23 P.3d 278, 287.

¶ 7 The *Gibbons* "permanent, substantial, and material change of condition" requirements also underscore the "primacy and autonomy of the new family unit created by the divorce:"

> It is not the business of the courts to become involved in everyday decisions of child rearing which are properly the prerogative of the parents or, in the case of divorced parents, the custodial parent[.]

*Kaiser*, 23 P.3d at 285 & 287.

¶ 8 It was only due to Father's allegations of "substantial, material and permanent change of circumstances" that this matter came before the court upon Father's motion to modify custody.

¶ 9 Father made a number of claims against Mother in an effort to invoke the court's continuing jurisdiction and secure full custody of his son. Particularly, Father claimed Mother left C.B. alone and unsupervised, the child had poor school performance and was excessively tardy and absent, child's desire to live with his Father, frequent moves by the mother required multiple school settings and resulted in disruption of his academic and emotional stability, physical abuse from C.B.'s older sibling, Mother's neglect of C.B.'s medical needs and Mother exposing the children to her multiple romantic partners.

¶ 10 However, Father failed to prove his allegations. The record contains little evidence of Mother's failure to supervise C.B. Father's allegations in this regard were primarily focused on a former family friend who had accompanied C.B. and his older sister on at least two occasions to the area Wal–Mart. However, all evidence showed that when Mother became aware that the former friend was not someone with whom her children should have contact, Mother took all appropriate measures to ensure the individual had no further contact with either of her children. Further, there was no evidence C.B. was injured as a result of his contact with the individual in question.

¶ 11 In addition there was some testimony regarding Father's ability to utilize C.B.'s paternal grandmother (Father's mother) should he need babysitting or care services for C.B., making him better able to supervise C.B. for this reason. However, Father ad-

---

1. In *Gibbons,* the Oklahoma Supreme Court articulated the applicant's burden in support of a motion to modify provisions of an existing custody order:

> In a proceeding to modify provisions of an order relating to custody of [a] child, [the] burden of proof is upon [the] applicant to show a substantial change in conditions since entry of [the] order sought to be modified which bear directly upon [the] welfare and best interest of [the] child or show that material facts bearing upon [the] welfare and best interest of [the] child were unknown to [the] court at [the] time [the] order sought to be modified was entered.

> . . .
> The provisions for care and custody of minor children may not be modified unless it be shown that the circumstances of the parties have changed or unless material facts are disclosed, which were either unknown or could not have been ascertained with reasonable diligence at the time when the last prior determination was made.

*Gibbons,* 442 P.2d at 484 (citing *Young v. Young,* 1963 OK 14, 383 P.2d 211 and *Ness v. Ness,* 1960 OK 259, 357 P.2d 973, 975).

mitted the grandmother's services were available for C.B. regardless who was designated primary custodian and Mother agreed she would be happy to leave C.B. with his grandmother when she needed babysitting services and grandmother was available.

¶ 12 Concerning C.B.'s school performance, Mother moved several times following her divorce from Father, primarily as a result of her second marriage, and contrary to Father's allegations, C.B. had not been moved from his current school in the three years preceding Father's motion to modify. C.B.'s academic performance also revealed nothing of concern. At the time of the hearing, C.B. was maintaining A's and B's in every class. For three academic years, 2004–05, 2005–06, and 2005–07, C.B. had a total of 9½ days of absences and there were no tardies noted in any of the academic reports provided at the hearing. Testimony also revealed both parents attended school events, including parent-teacher conferences and open houses.

¶ 13 Regarding Mother's alleged neglect of C.B.'s medical needs, Father offered a few examples of Mother's care, but was not able to support his allegations of neglect. Father cited evidence Mother had not immediately filled a prescription for C.B.'s earache. Evidence revealed Father cared for the ear for several days with alcohol and peroxide, then upon returning C.B. to his Mother, Father urged Mother to get treatment for the ear. Mother did not keep a Wednesday doctor's appointment, C.B. saw the doctor the next day and the prescription was filled the day after C.B.'s appointment. It appears the boy suffered without the aid of medical attention for several days under the care of both Father and Mother, but there was no evidence either parent handled the situation unreasonably or that C.B. was in any danger due to his parents' decisions in this regard. There was also evidence Mother missed a dental appointment sometime in 2002, approximately five years before the hearing. However, there was no corresponding evidence C.B. suffered because of the missed appointment. C.B. also had some inflammation that resulted in an examination by Texas child protective services, but there was no evidence Mother was in any way responsible for the injury and no evidence Mother mishandled the situation. Finally, C.B. suffered a bruising injury at the hands of his older sister. However, Father presented no evidence indicating medical intervention was necessary or that Mother's care response was inadequate.

¶ 14 Similarly, Father was unable to present any evidence Mother exposed the children to any of her romantic partners, other than her second husband. Mother also testified she had dated no one since her second divorce and no romantic interests stayed in her home while C.B. was present, other than the second husband during her marriage. Father presented no countervailing evidence in this regard.

¶ 15 As a result, the sum of Father's material, substantial and permanent change evidence came down to C.B.'s stated preference to live with his father and a less-than-ideal sibling relationship with his sister, who also lived with Mother. The sister and C.B. had engaged in at least two altercations, one of which resulted in a noticeable bruise to C.B.'s temple and eye area. However, the evidence was decidedly unclear regarding the circumstances of the clashes, including why, how and with whom the aggressions began. It was clear from C.B.'s private, in chambers, testimony that he was not enjoying his sibling relationship at his mother's house and this may have played a significant role in his desire to live with his father. It was also clear from C.B.'s testimony that he was fond of both his parents.

¶ 16 The trial court's order acknowledged there was no substantial, material or permanent change of circumstance to warrant a change of custody and based the modification exclusively on C.B.'s testimony. C.B.'s testimony provided the court with two things, an expression of his preference to live with his Father and his current dislike for his older sister. The trial court's order and its specific citation to *Nelson* indicate the modification was singularly premised on C.B.'s preference to live with his Father. *Nelson v. Nelson*, 2004 OK CIV APP 6, 83 P.3d 911. Mother asserts on appeal that C.B.'s preference, in itself, is not sufficient to modify custody. Under these circumstances, we agree.

¶ 17 A well-founded custody preference by a child can support modification of custody without proof of any other change of circumstance. *Hogue v. Hogue*, 2008 OK CIV APP 63, ¶ 7, 190 P.3d 1177, 1180; *Nelson*, 83 P.3d at 913; *Nazworth v. Nazworth*, 1996 OK CIV APP 134, ¶ 2, 931 P.2d 86, 88. It is the child's preference *and the supporting reasons justifying that preference* that may, in some circumstances, permit the change of custody without proof of any other circumstance beyond the preference. *Nazworth*, 931 P.2d at 88. *Nazworth* makes clear that a child's preference which is explained and supported by "good reasons" can justify a change of custody. *Id.*

¶ 18 It is the explanation, the supporting reasons and all the factors that led to the preference that allow the court to examine the child's preference in terms of the requirements outlined in *Gibbons*. Oklahoma law requires proof of a material, substantial and permanent change of circumstance, affecting the child's welfare to a material extent, and a showing the child's overall welfare would improve in order to remove the child from the custodial parent and modify custody. *Gibbons*, 442 P.2d at 485–86; 43 O.S.2001 § 112(3). In other words, the child's preference does not allow the court to bypass the obstacles articulated in *Gibbons*, but the child's preference and the reasons underlying it can be considered and evaluated to determine if the *Gibbons* requirements have been met. Here, in considering the necessary modification of custody requirements outlined in *Gibbons*, the trial court's decision is clearly contrary to the weight of the evidence.

¶ 19 Section 113 of title 43 gives the trial court some guidance to determine what role a child's expressed preference to live with one parent over another should play in formulating a custody or visitation order.[2] Under § 113(B)(2), "[i]f the child is of a sufficient age to form an intelligent preference, the court shall consider" the preference, but is not bound by it. If a child is twelve years or older, there exists a rebuttable presumption that he (or she) is old enough to form an intelligent preference. 42 O.S. § 113(B)(3).

¶ 20 However, the Oklahoma Supreme Court has also said "the whims, wants and desires of a minor child are not the criteria for determining which parent should be granted custody of a minor child." *Duncan v. Duncan*, 1969 OK 7, 449 P.2d 267, 269; *Davis v. Davis*, 1960 OK 196, 355 P.2d 572, 575. Therefore, the "intelligent preference" must be reasoned, considered, not whimsical or impulsive and must have some basis or explanation supporting it. As the whims and fleeting preferences of a child are not among the criteria to determine initial post-divorce custody placement, such factors are even less compelling when attempting to modify an existing custody order and ascertain whether a material, substantial and permanent change in circumstance has occurred.

¶ 21 The judge asked C.B. twice during the interview if there was anything about his

2. § 113. Preference of child

A. In any action or proceeding in which a court must determine custody or limits of or period of visitation, the child may express a preference as to which of its parents the child wishes to have custody.

B. 1. The court shall determine whether the best interest of the child will be served by the child's expression of preference as to which parent should have custody or limits of or period of visitation rights of either parent. If the court so finds, the child may express such preference or give other testimony.

2. If the child is of a sufficient age to form an intelligent preference, the court shall consider the expression of preference or other testimony of the child in determining custody or limits of or period of visitation. The court shall not be bound by the child's choice and may take other facts into consideration in awarding custody or limits of or period of visitation. However, if the child is of a sufficient age to form an intelligent preference and the court does not follow the expression of preference of the child as to custody, or limits of visitation, the court shall make specific findings of fact supporting such action if requested by either party.

3. There shall be a rebuttable presumption that a child who is twelve (12) years of age or older is of a sufficient age to form an intelligent preference.

C. If the child expresses a preference or gives testimony, such preference or testimony may be taken by the court in chambers without the parents or other parties present. If attorneys are not allowed to be present, the court shall state, for the record, the reasons for their exclusion. At the request of either party, a record shall be made of any such proceeding in chambers.

living situation, which at the time was with his Mother, that C.B. would like the court to change or help him with. Each time, C.B. said no. When asked if he liked everything the way it was, namely with his Mother, C.B. said yes. During the course of the interview, C.B. also said he wanted to live with his father. Each of these inconsistent expressions seemed genuine enough, but were by C.B.'s own admissions not the product of a long, thought-provoking analysis. When asked by the judge how long he had thought about his idea to live with Father, C.B. indicated he had come up with the idea that very day.

¶ 22 The trial court must carefully examine the child's articulated preference to determine if, in fact, it was an intelligent preference; was it well reasoned and considered or was it whimsical and impulsive. This is especially true when a child is young, like C.B., who had just turned ten that very morning. Here, it was clear from C.B.'s interview that he did not presently like his sister very much and that he had recently physically suffered at her hand, but there was no evidence regarding how "permanent, substantial and material" was the deterioration in the sibling relationship. There was no evidence of what caused the fights and as a result, no evidence of how lingering, systemic or permanent the conflict might be or what might have been done to alleviate it. C.B. did not indicate that he felt unsafe at his Mother's house because of his sister's presence.

¶ 23 It does not appear from the record below that C.B.'s expressed preference was sufficiently articulated to form an "intelligent preference." His stated preference to live with his father was equivocal, as he had also indicated he had no desire to change the status quo with his mother, and any substantive evidence regarding the conflict with C.B.'s sister was lacking to such a degree that determining whether this circumstance was material, permanent and substantial was not possible with the record provided. In this case, the child's stated preference, such as it was, did not provide a sufficient basis upon which to modify custody and the trial court erred in doing so based on the evidence available.

¶ 24 Additionally, Mother also claims the trial court improperly released confidential Department of Human Services (D.H.S.) records without providing her with notice or an opportunity to object. Father conceded the trial court's actions violated Mother's due process rights and disregarded the procedural requirements outlined in 10 O.S.2001 § 7005–1.2(D)(2). However, Father claims that because the information contained in the records did not have any bearing on the trial court's decision, the error cannot be the basis of any reversal on appeal.

¶ 25 Title 12 O.S.2001 § 78 provides:

The court, in every stage of action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect.

See also *In the Matter of the Estate of Bogan,* 1975 OK 134, 541 P.2d 854, 857.

¶ 26 The trial court specifically stated it was the child's testimony alone that provided the basis for the modification order. The record presents no evidence the D.H.S. records or Mother's inability to properly object to their release resulted in any harm to her in the modification proceeding. Mother cites no other resulting harm in her appeal. This error provides no basis for relief, as nothing in the decision below rested on this evidence.

¶ 27 In her third proposition, Mother requests appeal-related attorney fees, alleging Father is better able financially to shoulder the costs of the appeal. Sections 110(D) & (E) of title 43 allow for one party to pay the attorney fees of the other party in a post-divorce action "as may be just and proper under the circumstances." 43 O.S. § 110(D); *O'Connor v. O'Connor,* 1991 OK CIV APP 41, 813 P.2d 544 (expenses as referenced under § 110 include attorney fees).

¶ 28 In addressing this allegation, Father asserts Mother is not entitled to fees, because she did not timely file a motion for fees in the trial court. In this respect, it is important to note Mother's appeal brief addresses only appeal-related attorney fees, so that addressing her request in the appeal brief is permissible. 12 O.S. Supp.2002

§ 696.4(C). Father also alleges that Mother cannot base her request entirely upon Father's more secure financial status, as income disparity is usually an insufficient reason to require one party to bear the costs of appellate attorney fees. *Pierce v. Pierce,* 2001 OK 97, ¶ 25, 39 P.3d 791, 801.

¶ 29 In *Chamberlin v. Chamberlin,* 1986 OK 30, 720 P.2d 721, 727–728, the Oklahoma Supreme Court commented that fees under § 110 did "not depend upon the claimant's status as a prevailing party. Where sufficient funds and property are available to pay counsel fees, each party should bear its own litigation expense." *Pierce* noted there must be a showing by the party requesting fees that equity requires one party to bear these costs. In *Pierce,* the court found an income disparity of roughly 2 to 1 was not a sufficient showing that equity would require the greater earner to pay the attorney fees of the lesser earner. In the present case, the income disparity is roughly 2.4 to 1 and Mother offers no other factor for this court to balance in her request for appellate fees. Because income disparity alone will not normally tip the balance of equities for the payment of appeal-related attorney fees by one party and the Oklahoma Supreme Court previously found that a disparity similar to the one present in this case did not tip that balance, we decline to award Mother her appeal-related attorney fees in this case, Mother having articulated no other factors for this court to consider.[3]

¶ 30 The trial court's order granting Father's motion to modify custody of C.B. is REVERSED AND THIS CAUSE REMANDED. It is remanded for a new hearing on Father's motion to modify. On remand, the trial court may consider the child's well articulated expression of preference, but even as a now twelve year old, that preference is not controlling. The trial court must, as always, consider the *Gibbons* factors to determine the child's best interests.

MITCHELL, C.J., and HANSEN, P.J., concur.

---

**3.** Mother's request for attorney fees under 12 O.S. § 696.4 and 43 O.S. § 110(D) & (E) is unrelated to any costs she may be entitled to under 12 O.S. § 978.