2012 OK CIV APP 100

**Sabrina P. MULLENDORE, Petitioner/Appellee,**

v.

**Eric Vance MULLENDORE, Respondent/Appellant.**

**Nos. 108,740, 109,254.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Sept. 24, 2012.

Sam P. Daniel, Jon E. Brightmire, Doerner, Saunders, Daniel & Anderson, L.L.P., Tulsa, Oklahoma, and Pamela L. Anthony, Anthony & Associates, P.L.L.C., Tulsa, Oklahoma, for Petitioner/Appellee.

Bradley A. Grundy, Richard A. Wagner, II, Suzanne E. Kern, Jada Stiner, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, Oklahoma, for Respondent/Appellant.

JOHN F. FISCHER, Chief Judge.

¶ 1 Eric Vance Mullendore (Father) appeals the denial of his motion to modify custody and related rulings. Finding no error, we affirm.

## BACKGROUND

¶ 2 The parties were divorced in June 2007. An August 2007 order awarded custody of the parties' four minor children, aged three to six at the time, to Sabrina P. Mullendore (Mother). Father undertook various efforts to address concerns regarding his parenting ability raised by the district court during the initial divorce proceedings. On November 19, 2008, Father filed a motion to modify the August 2007 order in which he sought joint custody and equal visitation with the children. Mother filed a "counter-motion" to modify seeking to reduce Father's current visitation and to terminate the parenting coordinator previously appointed by the court. The district court denied Mother's motion to reduce Father's visitation but granted her motion with respect to termination of the parenting coordinator. Father appeals the denial of his motion to modify, the order terminating the parenting coordinator and the award of attorney fees to Mother.[1]

## STANDARD OF REVIEW

¶ 3 Custody contests are of equitable cognizance, and although an appellate court may examine and weigh the evidence, the findings and decree of the trial court cannot be disturbed unless found to be against the clear weight of the evidence or an abuse of discretion. *Daniel v. Daniel*, 2001

1. Mother filed a motion to strike portions of Father's reply brief, on which the Oklahoma Supreme Court deferred ruling to the decisional stage. Mother's motion to strike is denied.

OK 117, ¶ 21, 42 P.3d 863, 871; *Mueggenborg v. Walling*, 1992 OK 121, ¶ 7, 836 P.2d 112, 114. We will affirm a district court's determination with respect to a request to modify a child custody order unless "the trial court's decision is clearly against the weight of the evidence so as to constitute an abuse of discretion." *Williamson v. Williamson*, 2005 OK 6, ¶ 5, 107 P.3d 589, 591. "An abuse of discretion occurs when a decision is based on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling." *In re BTW*, 2008 OK 80, ¶ 20, 195 P.3d 896, 908 (footnote omitted).

### ANALYSIS

¶ 4 Father's appeal raises three issues for disposition. A fourth issue, that Mother relied on facts not in the record during her written closing argument, will not be considered. Father did not object after receiving Mother's closing argument or notify the district court of his position regarding the challenged statement. Generally, this Court does not reach issues the appealing party fails to raise in the district court, and we decline to do so here. *Bottles v. State ex rel. Oklahoma State Bd. of Med. Licensure and Supervision*, 1996 OK 59, ¶ 4, 917 P.2d 471, 472; *Jackson v. Jackson*, 2002 OK 25, n. 12, 45 P.3d 418.

### I. Change in Custody

¶ 5 Father's principal argument in this appeal is that the district court erred in finding that his evidence was insufficient to warrant a change in custody and visitation. The district court's authority to alter its custody and visitation orders is provided in 43 O.S.2011 § 112(A)(3): "[the court may] modify or change any order [providing for custody or visitation] whenever circumstances render the change proper either before or after final judgment in the action." It is well established that a parent seeking to modify custody bears the burden of proving that: (1) subsequent to the order sought to be modified, a permanent, substantial and material change of conditions directly affecting the

best interests of the minor children has occurred; and (2) a change in custody would substantially improve the temporal, mental and moral welfare of the minor children. *Gibbons v. Gibbons*, 1968 OK 77, ¶ 12, 442 P.2d 482, 485.[2] Further, "the entire determination of the question must be in the light of what is the child's best interest." *David v. David*, 1969 OK 164, ¶ 6, 460 P.2d 116, 117. Similar considerations are involved in determining a motion to modify previously ordered visitation. *Scott v. Scott*, 2001 OK 9, ¶ 5, 19 P.3d 273, 275.

¶ 6 As the district court noted and the record shows, Father had made "significant improvements in his ability to safely care and provide for the minor children" since the entry of the 2007 custody order. Father's evidence established that he attended conferences with his children's teachers, participated in school field trips and other activities, read books to his children's classes and coached their sports teams. Outside of school, Father's home was a safe, healthy environment for the children; he helped them with their homework and extracurricular activities, provided transportation when necessary and sound nutritional meals while the children were in his care. The parenting coordinator testified that Father did not give any of his children preferential treatment and that Father had achieved a level of parenting skill where he could spend "good quality time with his children," the goal expressed by the district court in its 2007 custody decision. Evidence from another witness, the parenting educator, established that Father had acquired, in her opinion, excellent parenting skills and that the children were thriving in his care. She testified that Father was invested in his children's lives, she had no concerns about his parenting capacity and that she did not believe continuation of parenting classes was necessary. Father also entered an offer of proof, that had his children been permitted to testify, they would have testified they wanted to spend equal time with him.

2. See Treva Krivohlavek Kruger, *Gibbons v. Gibbons, The Burden of Proof for a Change of Custody Since 1968*, 83 OBAJ 1709 (2012), for a comprehensive review of cases applying the *Gibbons* standard.

¶ 7 The district court concluded that as admirable as Father's efforts had been, becoming a better parent, in and of itself, did not automatically entitle Father to a change in custody. We agree. *Gibbons,* and those cases addressing the modification of an existing custody order, have focused the analysis not only on a change in circumstances but also on the effect of that change on the children. "[A]pplicant must show that the change in conditions or circumstances affects the welfare of the children and that a change in custody would result in greater benefit to the children." *Stanfield v. Stanfield,* 1960 OK 55, ¶ 0, 350 P.2d 261 (affirming the denial of the non-custodial parent's motion to modify and cited in *Gibbons* for stating one of the "basic rules" for determining a motion to change custody). Further, the fact pattern here is essentially identical to the facts in *Gibbons:* non-custodial parent sought a change in custody showing non-custodial parent's circumstances had changed. The *Gibbons* Court found that evidence insufficient and reversed the order modifying the original custody order because: "mother failed to sustain the burden of proof of making it appear that the change in her condition would result in the boy's being substantially better off, in those respects, if his custody were changed from the father to her." *Gibbons,* 1968 OK 77, ¶ 24, 442 P.2d at 487. We also find this record indistinguishable from facts on which *Stanfield* was decided.

> In the present case there has been a showing that defendant is now in a position to provide a home for these children in a good environment. However, there has been no showing that such home and environment is better than that provided by plaintiff and that a change would be of greater benefit to the children and their welfare.... Defendant's change of conditions alone is not sufficient reason, in our opinion, to require that these children be removed from their present surroundings and transplanted into an entirely new environment.

*Stanfield,* 1960 OK 55, ¶ 8, 350 P.2d at 263.

¶ 8 Absent from this record is any evidence that Mother's home or her parenting has changed, in a manner that adversely affects the children, since the entry of the 2007 custody order. *Cf. Johnson v. Wingert,* 2011 OK CIV APP 128, 268 P.3d 145 (reversing the termination of joint custody based solely on the father's improved circumstances). The fact that two parents are now able to provide the environment on which the district court's original custody order was predicated is insufficient to justify a change in that order.

¶ 9 Father also contends that the district court erred in denying his request to permit his children to testify regarding their preference as to the custody and visitation issues. The district court's September 29, 2009 minute order reflects that Father's request to have the children's testimony presented to the court was taken under advisement. At the hearing on October 14, 2009, Father's counsel announced that the court had ruled on that request. Father's counsel sought reconsideration of the court's denial of Father's request at the October 29, 2009 hearing, and the record reflects that the district court declined to do so. The controlling statute provides, in part:

A. In any action or proceeding in which a court must determine custody or limits to or periods of visitation, the child may express a preference as to which of the parents the child wishes to have custody or limits to or periods of visitation.

B. The court shall first determine whether the best interest of the child will be served by allowing the child to express a preference as to which parent should have custody or limits to or periods of visitation with either parent. If the court so finds, then the child may express such preference or give other testimony.

C. There shall be a rebuttable presumption that a child who is twelve (12) years of age or older is of a sufficient age to form an intelligent preference.

D. If the child is of a sufficient age to form an intelligent preference, the court shall consider the expression of preference or other testimony of the child in determining custody or limits to or periods of visitation. Interviewing the child does not diminish the discretion of the court in determining the best interest of the child.

The court shall not be bound by the child's choice or wishes and shall take all factors into consideration in awarding custody or limits of or period of visitation.

43 O.S.2011 § 113.[3]

■ The guidelines for determining whether children should testify in custody and/or visitation proceedings were adopted in *Ynclan v. Woodward,* 2010 OK 29, 237 P.3d 145. Although *Ynclan* was decided after the district court's 2009 ruling, "following these guidelines will set forth the due process standards from which we will measure objections to or allegations concerning due process issues in custody/visitation cases in all future cases including those already in the appellate pipeline." *Id.* ¶ 20, 237 P.3d at 156–57. One of the guidelines established requires the district court to "make and state on the record its preliminary determinations concerning whether the child's best interest is served by conducting such an in camera interview and whether the child is of a sufficient age to form an intelligent preference." *Id.* ¶ 19, 237 P.3d at 156.[4] Clearly, the district court made that determination twice in this case. However, the district court's ruling on Father's initial request is not included in the record. "The appellant bears the total responsibility for including in the appellate record all materials necessary to secure corrective relief." *Hulsey v. Mid–America Preferred Ins. Co.,* 1989 OK 107, ¶ 7, 777 P.2d 932, 936. Further, "[l]egal error may not be presumed in an appellate court from a silent record. The opposite is true. Absent a record showing otherwise, this court presumes that the trial court did not err." *Hamid v. Sew Original,* 1982 OK 46, ¶ 6, 645 P.2d 496, 497.

■ ¶ 10 Father's offer of proof only provides that if the children would have been permitted to testify, they " 'uniformly and unanimously have said that they wish to spend more time in their father's custody,' *i.e.,* no less than 50/50 time sharing with their parents." First, we note that the district court did grant Father partial relief by ordering the "2/2/5/5" plan Father requested for the summer months and affirming Father's expanded visitation then in effect. Second, even if permitted to testify, "the preference of the child is just that-a preference. We have never held that child preference is 'the' deciding factor when determining custody or modifying custody. Rather, it is merely one of many factors which the trial court is required to consider." *Foshee v. Foshee,* 2010 OK 85, ¶ 13, 247 P.3d 1162, 1166–67. Third, at the time of the hearing on the parties' motions to modify, these children were between the ages of five and eight years old, substantially younger than the twelve years of age that would create a rebuttable presumption requiring the court to "consider the expression of preference." 43 O.S.2011 § 113(D). *Cf. In re Marriage of Crouch,* 2010 OK CIV APP 144, 247 P.3d 747 (holding the district court erred in refusing to entertain the preference of a twelve-year-old child regarding periods of visitation). Although section 113 does not preclude the district court from finding that children younger than twelve are of sufficient age to form an intelligent preference, we find nothing in this record suggesting the district court should have made such a finding with respect to these children. "Admissibility of evidence in a cause tried to the court is within the sound discretion of the court, not to be disturbed unless there exists a clear abuse of discretion." *Edwards v. Andrews, Davis, Legg, Bixler, Milsten & Murrah, Inc.,* 1982 OK 72, ¶ 21, 650 P.2d 857, 863. Further, the party objecting to the court's evidentiary ruling has the burden of showing that the ruling was prejudicial. *Doyle v. Douglas,* 1964 OK 65, ¶ 10, 390 P.2d 871, 874. The test of prejudice is the likelihood the result would have been different had the evidence been admitted. *Hartford Ins. Co. of Midwest v. Dyer,* 2002 OK CIV APP 126, ¶ 17, 61 P.3d 912, 916. Father has failed to show that if considered, the evidence of his

---

3. Although not the version of the statute in effect when the district court decided this case, the current version is in all respects material to this appeal identical to 43 O.S. Supp.2002 § 113.

4. "When the trial court determines the child's best interest will be served by considering the child's preference, whether to hold such an interview is generally within the trial court's discretion." *Ynclan,* 2010 OK 29, ¶ 13, 237 P.3d at 152.

children's preference would have changed the result.

¶ 11 Finally, Father argues that the district court erred in failing to consider the preference of his children because "a child's stated custody preference can support a modification without proof of any other change of circumstances." Father's argument is derived from this Court's Opinion in *Nazworth v. Nazworth*, 1996 OK CIV APP 134, 931 P.2d 86, holding that where a thirteen-year-old child requested a change in custody that determination "cannot be made fairly and reasonably without hearing from the child." *Id.* ¶ 6, 931 P.2d at 88. In *Nelson v. Nelson*, 2004 OK CIV APP 6, 83 P.3d 911, this Court relied on *Nazworth* and section 113 to affirm the change of custody of a twelve-year-old child based on his preference, holding: "Under both case law and statutory law, a well-founded custody preference by a child will support a change of custody without proof of any other change of circumstance." *Id.* ¶ 4, 83 P.3d at 913.[5]

¶ 12 We have followed the *Nelson* and *Nazworth* decisions in *Eimen v. Eimen*, 2006 OK CIV APP 23, 131 P.3d 148, considering preference of three children, aged fourteen, sixteen and eighteen in regard to their father's motion to modify the physical custody provisions of a joint custody plan, and *Hogue v. Hogue*, 2008 OK CIV APP 63, 190 P.3d 1177, regarding the preference of a fifteen-year-old. In *Buffalo v. Buffalo*, 2009 OK CIV APP 44, 211 P.3d 923, we reversed a change of custody based solely on the preference of the ten-year-old child. We noted that *Nazworth* required the child's preference to be well-founded and supported by reasons justifying that preference. *Id.* ¶ 17, 211 P.3d at 927 (preference should be "for good reasons and well supported by the facts"). Father's argument ignores this aspect of the *Nazworth* decision, arguing that preference alone can justify a change in custody. In *Buffalo*, this Court also addressed the relevance of the *Gibbons* test in evaluating a child's section 113 preference, holding "the child's preference does not allow the court to bypass the obstacles articulated in *Gibbons*, but the child's preference and the reasons underlying it can be considered and evaluated to determine if the *Gibbons* requirements have been met." *Id.* ¶ 18, 211 P.3d at 927. We agree with *Buffalo*.[6]

¶ 13 A child's preference "should never be the only basis for determining custody." *Ynclan v. Woodward*, 2010 OK 29, ¶ 12, 237 P.3d at 151 (footnote omitted). Therefore, even if the district court had allowed the preference of these children to be presented, their preference, as asserted in Father's offer of proof, would not have justified a change of custody in this case based on the *Gibbons* analysis for the reasons we have previously articulated.[7]

5. In *Nelson*, the court also considered the testimony of the younger brother, aged 7, who according to the district court's findings had a "strong bond" with his older brother. The district court concluded that the younger boy "should not be separated" from his older brother "in order to avoid jeopardizing that bond." *Id.* ¶ 1, 83 P.3d at 912.

6. *See Thompson v. Thompson*, No. 99,393, slip op. at 8 (Okla.Ct.App. Aug. 24, 2004) ("*Nazworth* stands only for the proposition that if the child requests a change of custody, it is reversible error for the trial court not to interview the child to ascertain the reasons for the change of custody ... if the best interest test is met, a reasoned expression of preference by a child can support a trial court's decision to modify custody."); *Beougher v. Beougher*, No. 94,648 (Okla.Ct.App. Sept. 4, 2001) (noting that section 113 allows the trial court to exercise its discretion in determining whether a child will be allowed to express a preference as to custody).

7. The father in *Foshee* made the same argument made by Father in this case. Although given the opportunity to approve the father's interpretation of *Hogue* and *Nelson*, the Supreme Court declined to do so.

The father relies on several cases from our Court of Civil Appeals in support of his argument. The Court of Civil Appeals opinions are not binding on this Court, but even if they were, *Hogue v. Hogue*, 2008 OK CIV APP 63, 190 P.3d 1177, and *Nelson v. Nelson*, 2004 OK CIV APP 6, 83 P.3d 911, both involve the children's preference when modifying custody from one parent to the other, not modifying or terminating joint custody which is altogether different. In that context, we have not addressed the appropriate weight to be given to a child's preference when the child's change in preference is the only change which has occurred, nor do we do so today.

*Foshee v. Foshee*, 2010 OK 85, n. 6, 247 P.3d 1162, 1167.

## II. Termination of Parenting Coordinator

■ ¶ 14 Father also appeals the district court's termination of the parenting coordinator. Father argues, in essence, that the district court appointed the parenting coordinator for a minimum of ten years and cannot change that appointment. In *Dilbeck v. Dilbeck*, 2010 OK CIV APP 142, ¶ 12, 245 P.3d 630, 634, we rejected this overly restricted reading of 43 O.S.2011 § 120.3(A). The order of the district court terminating the services of the parenting coordinator is affirmed.

## III. Attorney Fees

■ ¶ 15 Finally, Father contends the district court erred in granting Mother's motion for attorney fees. Father correctly cites the controlling authority: In matrimonial cases, attorney fee awards do not "depend on one's status as prevailing party in the case, [and] must be granted only to that litigant who qualifies for the benefit through the process of a judicial balancing of the equities." *Thielenhaus v. Thielenhaus*, 1995 OK 5, ¶ 19, 890 P.2d 925, 935. *See King v. King*, 2005 OK 4, ¶ 30, 107 P.3d 570, 581. The district court's order is based on extensive findings regarding Father's conduct, which the court found made these proceedings "extraordinarily complex." That conduct is summarized in the court's order, including the finding that, because of his lack of financial resources, Father was able to conduct the litigation in the manner he did only because of the support of his family members. The district court awarded Mother approximately twenty-five percent of the attorney fees she incurred during these proceedings. As a result, the district court's award was not "punitive in nature" and recognizes Father's legitimate interest in pursuing more time with his children. Nonetheless, Father's litigation conduct can support an equitable award of attorney fees to Mother and we find that it does so here. *See Foshee*, 2010 OK 85, ¶ 22, 247 P.3d 1162, 1170. The award of attorney fees to Mother is affirmed.

## CONCLUSION

¶ 16 The district court did not err in denying Father's motion to modify. Father's changed circumstances alone do not satisfy the *Gibbons v. Gibbons* test for changing the district court's previous custody order in this case. Likewise, we find no error in the district court's order terminating the appointment of the parenting coordinator or the order granting Mother's motion for attorney fees, and we affirm those orders.

¶ 17 **AFFIRMED.**

WISEMAN, J., concurs, and BARNES, P.J., concurs as to Part I, concurs in result as to Part II, and dissents as to Part III.

BARNES, P.J., concurring as to Part I, concurring in result as to Part II, and dissenting as to Part III.

¶ 1 I respectfully concur in result with Part II of the Majority's Opinion. Although Father concedes the evidence shows this case is no longer considered high-conflict, he nevertheless argues that the trial court abused its discretion in terminating the parenting coordinator. He argues the evidence demonstrates that interaction and communication issues continue to cause some problems between the parents that upset the children. He concludes that continuing the parenting coordinator is in the children's best interests pursuant to 43 O.S.2011 § 120.3(B) and, therefore, the trial court erred in terminating the parenting coordinator. I agree with the Majority Opinion and conclude no error was committed.

¶ 2 "An abuse of discretion occurs when a decision is based on an erroneous conclusion of law, or where there is no rational basis in evidence for the ruling." *Dilbeck v. Dilbeck*, 2010 OK CIV APP 142, ¶ 7, 245 P.3d 630, 633 (citation omitted). As is stated in the Majority Opinion, in *Dilbeck* we rejected an overly restricted reading of 43 O.S.2011 § 120.3(A) that attempted to curtail the ability of the trial court to modify any order, including an order appointing a parenting coordinator, to facilitate the district court's custody and visitation order. *Dilbeck*, ¶ 12, 245 P.3d at 634. Consequently, although in the present case the trial court initially appointed the parenting coordinator for a minimum of ten years, the court was within its discretion to modify that order.

¶ 3 Moreover, § 120.3(B) provides that upon objection of either party to the appointment of a parenting coordinator, "[t]he court shall not appoint a parenting coordinator" unless it "makes specific findings that the case is a high-conflict case," *and* that it is in the best interests of the children to appoint the parenting coordinator. Both findings are required.[1] The court properly relied on evidence that demonstrated the case was no longer high-conflict. Father's concession that this case is no longer high-conflict further supports the trial court's decision that a parenting coordinator was no longer needed. Consequently, I concur with the Majority that the order of the district court terminating the services of the parenting coordinator is affirmed.

¶ 4 I, however, respectfully dissent to Part III of the Majority Opinion. As the Majority correctly states, prevailing party status does not determine who qualifies for attorney fees. *Thielenhaus v. Thielenhaus*, 1995 OK 5, ¶ 19, 890 P.2d 925, 935. Rather, "[i]n domestic matters," they "may be granted only to that litigant who qualifies for the added benefit by the mandated process of judicial balancing of the equities." *Stepp v. Stepp*, 1998 OK 18, ¶ 19, 955 P.2d 722, 726–27. Although Father was not fully successful because he did not attain equal custody of his children and his litigation strategy was characterized by the trial court as "extraordinarily complex," in my view his arguments were neither frivolous nor lacking in merit. *Id.* ¶ 20, 955 P.2d at 727. The depth of the Majority's analysis in itself supports this conclusion.

¶ 5 Although Father was required to defend against Mother's motion to modify visitation and appointment of the parenting coordinator, Mother, argues that it was Father's actions that made her defense of his motion to modify custody "extraordinarily complex." She argues that the "inordinate time" spent by Father with the parenting coordinator, his ex parte meetings with the parenting coordinator, and the size of the file compiled by the parenting coordinator all contributed to her doubt about the parenting coordinator's neutrality and, thus, her attorney's need to spend time trying to find "evidence of the partiality of the parenting coordinator."

¶ 6 Mother's characterization of the parenting coordinator's actions as biased and in favor of Father is at odds with the August 28, 2007 order appointing the parenting coordinator. That thirteen-page order expressly provides for ex parte meetings between the parenting coordinator and the individual parents, their attorneys, and other professionals involved in the case. As previously stated, the court's August 2010 order terminating the services of the parenting coordinator did not state the parenting coordinator was terminated for cause; rather, the order stated the parenting coordinator's services were terminated because the case was no longer high-conflict as required by 43 O.S.2011 § 120.3(B). Moreover, the trial court's order awarding attorney fees to Mother also specifically states "[t]he Court makes no specific finding of impropriety regarding [Father's] actions" in using the parenting coordinator.

¶ 7 Further, as Mother concedes, it was the trial court that established a complex array of professionals to assist Father with developing parenting skills in the best interests of the children, and consequently, whose reports caused both parties to expend money in preparation for their trial testimony. She also concedes not all of these professionals were used just to defend against Father's motion. Father took full opportunity to avail himself of the very resources established by

---

1. Mother argues that the parenting coordinating was terminated for cause pursuant to § 120.3(G)(2); however, nothing in the court's August 27, 2010 order supports that reason as a reason for termination of the parenting coordinator. The court found that the "requirements for appointment of a parenting coordinator under 43 O.S. § 120.3 no longer exist." The court ordered the parties to "effectively and civilly communicate with one another involving the children," and ordered "each shall ... keep the other apprised of" the children's well being while in the care and keeping of the other. In ordering the termination of the parenting coordinator's services, the court ordered the parties to communicate by email and text messaging if they were unable to "effectively and civilly communicate directly...." Nothing in the court's order states the parenting coordinator was terminated for cause, but rather the order was focused on each parent's continued efforts to effectively and civilly communicate with the other, efforts the parents already made that moved the case away from being one of high-conflict.

the court for his use.[2] But that use·was not found to be improper and should not, in my view, be used as a vehicle for taxing attorney fees against him.[3]

¶ 8 Further, Mother's income is significantly greater than Father's. Although his family may have supported him and helped him finance his lawsuit, · *his* income is far less than Mother's. *See Stepp v. Stepp*, 1998 OK 18, ¶ 20, 955 P.2d at 727. Moreover, while Father's family may have given him financial assistance, the record does not support a conclusion that he has no financial obligation to them.

¶ 9 I see no compelling equities that reasonably favor an award of attorney fees to

Mother under these circumstances. Consequently, contrary to the Majority's conclusion, I conclude Father's litigation conduct does not support the trial court's award of attorney fees to Mother and conclude the award was an abuse of its discretion. Therefore, I would reverse the order awarding attorney fees to Mother.

---

**2.** *See* R., p. 18, August 28, 2007 order, paragraphs 8–9.

**3.** It is also worthy of note that the order appointing the parenting coordinator required the parties to each pay fifty· percent of the parenting coordinator's fees. Mother has pointed to no place in the record where she or the court sought to modify that percentage based on the use Father was making of the parenting coordinator. In my view, such an adjustment might have been the more appropriate course in this case.