JACKS et al. v. DUNHAM.

No. 29517.   Dec. 17, 1940.

Rehearing Denied Jan. 14, 1941.

*108 P. 2d 1020.*

Brown Moore and Guy Horton, both of Stillwater, for plaintiffs in error.

McGuire, McGuire & Reeves and Ned Holman, Jr., all of Guthrie, for defendant in error.

BAYLESS, C. J.  This is an appeal from the district court of Logan county. Mattie Jones and her former husband, Sam Jones, executed a note to Pete Dunham to evidence a debt owing by Sam Jones to Dunham. Mrs. Jones was also

indebted to a bank on several small notes of her own. Sam Jones died and left her two tracts of land, one of 80 acres and one of 40 acres. About a year after Sam Jones died, Mattie married Jim Jacks. This was in January, 1937. In March, 1937, Mattie deeded the two tracts of land to Jim Jacks. Shortly thereafter Dunham and the bank obtained judgments against Mattie on the notes above mentioned, and transcripted them to the district court, and the bank assigned its judgment to Dunham, who now owns all of the indebtedness. Dunham brought this action against Mattie, Jim and Joseph Jacks, a brother of Jim, who holds a mortgage on the 120 acres, to have the deeds from Mattie to Jim set aside as fraudulent and void, and to have the mortgage to Joseph voided in order that Dunham might seize the land to satisfy his judgments.

After extended hearings, the trial court sustained Mattie and Jim's claim that the 80-acre tract constituted their homestead, but sustained Dunham's claim insofar as the 40-acre tract is concerned, and the defendants appeal. The 80-acre tract is not involved.

Appellants first complain that the trial judge erred in overruling their demurrer to the evidence of the plaintiff. One who seeks to have a conveyance set aside under the rules of law stated in sections 10007, O. S. 1931, 24 O. S. A. § 5, and 9697, O. S. 1931, 24 O. S. A. § 10, has the burden of proof to establish that the conveyance was made by a grantor without consideration or for a consideration but in bad faith for the purpose of hindering, delaying, or defrauding creditors. Security State Bank v. Lockett, 185 Okla. 320, 93 P. 2d 756, and other cases. The plaintiff did not make any such showing. The evidence of the plaintiff only established the existence of the debts against Mrs. Jacks, and the transfer of the property she owned, from which it might be inferred she had no property left after the transfer. Plaintiff did not introduce any evidence relating to the consideration

for the transfer nor to the good or bad faith of the husband and wife. We have said that the relationship of grantor to grantee does not constitute prima facie evidence of fraudulent intent. Security State Bank v. Lockett, supra, citing earlier Oklahoma decisions.

Jim Jacks testified that he courted Mrs. Jones for several months before he married her; that they had several conversations about her debts, and she told him, "* * * just before she and I married, about her debts, and what she was up against and if I would take them up she would deed me the land"; that he let her have $150 before they were married; that after they were married he paid Jessie Cochran $175, and paid Sam Brooks $1,210, to satisfy a mortgage upon the property, and paid one or two notes at a bank. He testified that he had the cash on his person and in a hiding place for the $150; that he got $35 or $40 out of the First National Bank, Guthrie, and more than that from his hoarding place, and added a cow and plow to the money, to pay the debt to Jessie Cochran. He testified that he paid Sam Brooks $500, in cash, in January, 1937, which was the month he married, and received a receipt therefor, and that he paid Sam Brooks $610, in cash, in the latter part of May, 1937; and that he got this first payment of $600 by selling some mules and cows to Tom Peyton, and that he got the $610 from his brother Joseph in Texas, for which the mortgage was given. His testimony to this effect was not contradicted by anyone, and it was corroborated by Sam Brooks, who testified to receiving payment of the $1,210, and delivering the papers, and by the testimony of P. M. Carey, an officer in the First National Bank, Guthrie, to the effect that he knew Joseph Jacks, and that Joseph Jacks had sufficient property and money to enable him to lend Jim $1,200, if he so desired. On cross-examination of Jim, and the other witnesses, the plaintiff established that they did business in a most unusual manner, in that Jim had no writings with him to evidence a single transaction to which he

testified, and he and Brooks both testified that the note, mortgage, and other papers were destroyed at the time they were paid off. The mortgage was unrecorded. Much delay seems to have occurred in respect to the execution and delivery of several of the papers that the parties say they exchanged, and plaintiff lays much stress in his argument upon the fact the mortgage was not recorded, and the parties dealt with each other in such a seemingly slack manner. From all of this, and the function the trial judge serves in passing upon the credibility of the witnesses, etc., he argues that the trial judge justifiably chose to disbelieve defendants and their witnesses. This is not the only manner in which the trial judge may have arrived at his decision. He may have thought their evidence had probative value but not sufficient to discharge their burden, in which instance he was wrong; or he may have thought it was so unusual as to contradict itself and to not be worthy of credence. No witness contradicted the defendants or their witnesses; but the trial judge may have thought their evidence incredible. See 20 Am. Jur. 1033, §§ 1183 and 1184, and the authorities cited therein.

After considering all of the evidence in the record, we are of the opinion that the trial judge's decision is clearly against the weight of the evidence. We feel compelled to reach this conclusion out of consideration of the fact that the plaintiff did not in any manner discharge the burden that rested upon him (Lynn v. Brenner, 145 Okla. 188, 291 P. 509, and other cases), but rather relies entirely upon argument respecting the weaknesses of the showing made by the defendants.

We must recognize that the course of business practices adopted by the defendants and those who dealt with them are not those ordinarily used. But there are factors involved in the evidence of the defendants that cannot be overlooked and the plaintiff did not attempt to refute or contradict. Plaintiff himself dealt with Mr. Jones, the deceased former husband of Mattie Jacks, without written evidence of the state of their running account, and personally testified that he was entirely reliable. If Sam Brooks felt the same way about Mr. Jones and did not record his mortgage, it is further evidence of Mr. Jones' reliability. Sam Brooks testified concerning the drafting of the mortgage papers and gave the name of the attorney who drafted them. With respect to other papers the name of the notary public was given. The evidence respecting the sales of personal property, the bank from which money was withdrawn, the persons to whom it was paid, and other matters were testified to in so detailed a manner as to permit investigation and refutation if the plaintiff would undertake so to do. Sam Brooks corroborated the testimony respecting the payment of the mortgage. Mr. Carey, an officer of the First National Bank of Guthrie, testified respecting the financial status of Joseph Jacks, and if plaintiff doubted whether Jim Jacks had money in that bank, he did not query Mr. Carey thereabouts. The case was tried without a jury, and several continuances were taken, and the defendants were permitted to amend their answer and introduced evidence at subsequent hearings, and ample time passed for the plaintiff to have investigated these various angles of defendants' evidence and to have produced evidence to contradict it, if possible.

The plaintiff did nothing in this respect. We do not believe the defendants' evidence was inherently improbable or incredible. If it appears to be unusual and to create some doubt in itself of its credibility, nevertheless the plaintiff did nothing to take advantage of the opportunities offered to produce contradictory evidence. It seems to us that this argues more strongly that the plaintiff was unable to contradict this evidence than that the evidence was incredible.

We are mindful of the rule that such transactions between husband and wife are not in themselves invalid, nor do

they of themselves raise an inference of fraud, but we are also mindful of the rule that such transactions between husband and wife are scrutinized with greater closeness than such transactions between unrelated parties. Nevertheless, in order to sustain the judgment herein in favor of plaintiff, who has made no showing on his own behalf, we must say that the evidence of the defendants consists altogether of incredible testimony, and this we cannot do. Again we say, several continuances were taken during the hearing, but no proof was produced by plaintiff that contradicted defendants' evidence.

The judgment is reversed and the cause is remanded, with directions to take further proceedings not inconsistent with the views expressed herein.

OSBORN, CORN, DAVISON, and NEFF, JJ., concur.