**CARRACO OIL COMPANY, a corporation, Plaintiff in Error,**

v.

**R. J. ROBERTS (Substituted for Alpha Finance Company, Inc., a corporation), Great Western Oil & Gas Company, a corporation, The Halliburton Company, a corporation, and Roy Beal, d/b/a Beal Drilling Co., Defendants in Error.**

**No. 40186.**

Supreme Court of Oklahoma.

Sept. 15, 1964.

Rehearing Denied Nov. 24, 1964.

King & Wadlington, by Carloss Wadlington, Ada; Houston, Klein & Davidson, Tulsa, for plaintiff in error.

Deaton, Gassaway & West, Ada, for defendants in error.

JACKSON, Justice.

In the trial court, Alpha Finance Company filed a petition asking for the foreclosure of a $74,000 note and mortgage against substantial oil and gas leaseholds owned by a defendant Great Western Oil and Gas Company. Shortly after suit was filed, and before any defendant had answered, R. J. Roberts was substituted as party plaintiff upon motion by Alpha, which motion was heard and sustained without notice to defendants. It appears that at the time of filing suit, Roberts had contracted to buy the note and mortgage from Alpha, but that the assignments were not executed by the proper corporate officials of Alpha (in New Jersey) until just before the motion for substitution of plaintiffs was made.

One of the defendants was Carraco Oil Company, the sole appellant in this court. After the substitution of Roberts for Alpha as plaintiff, Carraco pleaded to the merits of the action, filing a general denial and cross petition (designating Roberts as plaintiff) in which it alleged that it held a valid judgment against Great Western dated Jan. 31, 1961, and that the mortgage sued on by Roberts (dated and recorded on Oct. 22, 1959) was a fraudulent conveyance, executed as a part of a scheme to defraud the creditors of Great Western and defeat the judgment lien of Carraco. It asked that the mortgage be adjudged void and cancelled, and that the judgment of Carraco dated Jan. 31, 1961, be declared a first and prior lien upon the leaseholds concerned.

From the judgment declaring the Alpha mortgage a first and prior lien, and denying Carraco any relief on its cross petition, Carraco appeals, arguing three propositions.

The first proposition challenges the sufficiency of the evidence to sustain the judgment.

The record shows that the contract which became the basis of Carraco's judgment against Great Western was entered into on April 20, 1959. By the terms of this detailed and rather involved agreement, Great Western agreed to drill about 23 wells for Carraco in connection with a water-flood operation for secondary recovery purposes, on leases owned by Carraco. Carraco agreed, among other things, to pay certain sums at specified intervals to Great Western. Although the plan appears to have been for Carraco to make payments as they were "earned" by Great Western's drilling operations, the contract unequivocally called for payment by Carraco of a total of $120,000 by Sept. 1, 1959.

Thereafter Carraco made payments to Great Western under the contract as follows: April 25, 1959, $15,000; May 14,

1959, $5,500; Nov. 4, 1959, $5,500: or a total of $26,000. Note that the last payment was made *after* the execution and recording (on Oct. 22, 1959) of Alpha's mortgage from Great Western.

While this Carraco-Great Western contract was in effect, Carraco sold all of its leases, thus making it impossible to complete the agreement. At the time of the sale, it appears that Carraco had paid over to Great Western about $13,000 more than Great Western ever "earned" under the contract. On July 22, 1960, Carraco sued Great Western for this amount, and Great Western filed a cross petition asking for damages for breach of contract. Although the resulting judgment for Carraco in the amount of $10,000, entered on January 31, 1961, is in the ordinary and usual form, it is undisputed that it actually was the result of a compromise and agreement between the parties. This is the judgment which Carraco urges, in the instant action, as a first and prior lien.

Carraco's theory is that it was an *existing* creditor of Great Western on the date of execution of the mortgage to Alpha (October 22, 1959); that the execution of the mortgage rendered Great Western insolvent; that it was executed in bad faith and without a fair and valuable consideration for the purpose of "hindering, delaying and defrauding" the creditors of Great Western; and that the mortgage was therefore voidable upon Carraco's cross petition.

24 O.S.1961 § 10, provides as follows:

"Every conveyance of real estate or any interest therein, and every mortgage or other instrument in any way affecting the same, made without a fair and valuable consideration, or made in bad faith, or for the purpose of hindering, delaying or defrauding creditors, shall be void as against all persons to whom the maker is at the time indebted or under any legal liability."

24 O.S.1961 § 11, provides:

"Any person in this State indebted to other persons shall have the right to prefer one or more of such creditors in good faith to secure a valid debt, which preference may be manifested by payment, by mortgages, either real or chattel, or by the transfer of personal property or real estate, and if received by the creditor in good faith, such conveyance or mortgage shall be valid in the hands of the mortgagee and constitute a preference to the extent thereof, subject to the laws relating to the filing and recording of mortgages."

Thus it may be said that the mortgage from Great Western to Alpha, if made and accepted in good faith, and even though it had the effect of preferring one creditor over another, was not necessarily fraudulent or objectionable; on the other hand, if it was made or accepted (1) in bad faith, (2) without a fair and valuable consideration, or (3) for the purpose of hindering, delaying or defrauding creditors, it was void as to Carraco.

■ Carraco does not argue in its brief on appeal, and the record does not show, that the mortgage was made without a fair and valuable consideration. On the contrary, the record affirmatively shows that Alpha paid a total consideration of $74,000, in the form of cash advanced at various times, for the note and mortgage. The fact, pointed out by Carraco, that a substantial portion of this money was advanced before the note and mortgage were executed, is of no controlling consequence. It is well settled that a bona fide pre-existing debt forms a good consideration for a conveyance or transfer of land; Trave-Trammell Co. v. Millard, 108 Okl. 157, 235 P. 161; Security State Bank of Comanche v. Lockett, 185 Okl. 320, 93 P.2d 756; 37 C.J.S. Fraudulent Conveyances § 155.

■ In applying 24 O.S.1961 § 10, this court has consistently held that a creditor seeking to set aside a conveyance as fraudulent has the burden of proving either (1) that it was made without a fair and valuable consideration or (2) that the grantor was insolvent, or was made insolvent, when the conveyance was executed.

Jacks v. Dunham, 188 Okl. 353, 108 P.2d 1020; Stoner v. Farber, Okl., 263 P.2d 159. Since the record shows that Alpha paid a fair and valuable consideration for the note and mortgage, we now examine the evidence on the question of the insolvency of Great Western on October 22, 1959.

On this question, three witnesses testified. Mr. McDonald, a former president of Great Western, testified that on October 22, 1959, the assets of Great Western were worth "something over and above the amount of the mortgages". Mr. McKeel, a public accountant, who did the accounting work for Great Western for a period of about two years, testified that Great Western continued to pay its bills and meet its obligations for a considerable period of time after 1959, and that he did not believe it was insolvent in 1959. Mr. Britton, president of Carraco, testified that at time of trial (February, 1962) the physical properties of Great Western were worth $60,000. As to the value in October, 1959, he said that the net value of the oil produced "in that two years" plus $60,000 would be the value. However, he conceded that he had not studied certain geological reports on Great Western leases. Other evidence showed that these reports in 1959 indicated great promise for some of the then undeveloped Great Western leases. Heavy expenditures in the development of these leases subsequent to Oct. 22, 1959, which proved unproductive, led to financial difficulties for Great Western in 1961.

In view of the above summarized evidence, we cannot say that the inferential finding of the trial court that Great Western was not insolvent in October, 1959, was clearly against the weight of the evidence.

Carraco also levels another attack at the mortgage given by Great Western to Alpha. It argues that Alpha and Great Western were related or affiliated corporations; that transactions between such corporations will be closely scrutinized by a court of equity; that the burden of proving the fairness of the transaction is upon those upholding it; and that a creditor may attack such a transaction and have it

set aside if it is made at a time when the debtor corporation is insolvent. In support of this argument, Carraco cites 19 C.J.S. Corporations § 854; Jacob v. Colcord, 136 Okl. 158, 275 P. 649; Union Coal Co. v. Wooley, 54 Okl. 391, 154 P. 62, 19 A.L.R. 312, 338; and other cases from this and other jurisdictions. An examination of these cases reveals that they all deal with a situation where the debtor corporation was insolvent at the time of the transaction concerned, or was rendered insolvent by the transaction. As we have seen, the evidence in the instant case does not support the allegation that Great Western was insolvent on October 22, 1959, and the cited cases are therefore not in point.

Carraco's second proposition on appeal is that the court erred in admitting incompetent and hearsay evidence. The evidence concerned consisted of audits of the accounts of Great Western. The witness on the stand at the time had previously answered, without objection, detailed questions as to the contents of the audits, which were pertinent only to the question of the insolvency of Great Western. No effort is made in the Carraco brief to show that the admission of this evidence, if improper, was prejudicial to Carraco. It is well settled that where a party seeks the reversal of a judgment obtained against him on the ground of admission of incompetent evidence, he has the burden of showing that such evidence so admitted over his objection was not only incompetent, but prejudicial, and on his failure to do so, this court will not reverse the judgment on such assignment of error. Marten v. Credit Adjustment Service, Inc., Okl., 349 P.2d 742.

The third proposition is that the court erred in overruling a motion of Carraco for an order requiring the production, for examination by Carraco, of certain records of the substituted plaintiff, Roberts, and the original plaintiff, Alpha. This motion was based upon 12 O.S.1961 § 482, which provides:

"Either party, or his attorney, may demand *of the* adverse party an inspec-

tion and copy, or permission to take a copy of a book, paper or document *in his possession or under his control,* containing evidence relating to the merits of the action or defense therein. * * *" (Emphasis supplied.)

The record shows that the motion was sustained as to the records of Great Western, Carraco's co-defendant, but actually an adverse party. Carraco's complaint is that the court erred in overruling the motion as to the records of Alpha Finance Company.

■■■ At the time the demand was served under the above quoted statute, Alpha Finance Company was no longer a party to the action, Roberts having been substituted as party plaintiff. At the hearing on the motion, there was no evidence at all that the records of Alpha, which Carraco sought to examine, were in the possession or control of plaintiff Roberts, or defendant Great Western, or of any other party to the action. In Landon v. Morehead, 34 Okl. 701, 126 P. 1027, this court said with regard to the above quoted statute:

"In a proceeding under section 5888, Comp.Laws 1909 (12 O.S.1961 § 482), to obtain of the adverse party an inspection and copy, or permission to take a copy, of paper or document, it must first be established that such paper or document is in existence, and, if this be shown, *that it is in the possession of, or under the control of, said party.*" (Emphasis supplied.)

We therefore hold that the court did not err in overruling the motion insofar as the records of Alpha Finance Company were concerned.

■■■ In this connection, and under the same proposition, Carraco argues that the court erred in making the order substituting Roberts as plaintiff in place of Alpha, without notice to any of the other parties to the action. It may be conceded that notice to all parties concerned is ordinarily a requisite of a valid substitution of parties. 67 C.J.S. Parties § 67c. However, objec-

tions with respect to parties, where not such as to affect the right to maintain the suit, ordinarily are waived by failure to interpose them at the proper time and in the proper manner, as by demurrer or answer. 67 C.J.S. Parties § 104d. In the instant case, at the time the motion for substitution of plaintiffs was made, Carraco had not pleaded to the merits of the action; after the motion for substitution of plaintiffs had been made and sustained, but before answering, Carraco joined with the substituted plaintiff, Roberts, in an oral request for the appointment of a receiver to take charge of the properties involved in the action; Carraco later demurred to the petition upon the general ground of failure to state a cause of action only, without objecting to the substitution of Roberts for Alpha as plaintiff; it later filed an answer which contains no objection of any kind to the substitution of parties. After a careful examination of the entire record in this case, we are unable to determine that this precise question was presented to the trial court at any time; and it was not specifically mentioned in the motion for new trial.

Under those circumstances, we hold that by failing to interpose a timely objection, Carraco waived its right to assign the substitution of Roberts for Alpha as plaintiff without notice, as error in this court on appeal. Wiggins v. Sterne, Okl., 293 P.2d 603; Humphrey v. Selected Investments Corp., 206 Okl. 321, 244 P.2d 299; McMillan v. Lane Wood & Co., Okl., 361 P.2d 487.

■■■ The judgment of a trial court is presumed to include a finding of every material fact necessary to support it. McGrath v. Eichoff, 187 Okl. 64, 100 P.2d 880. The judgment in the instant case presumptively included a finding that Great Western was not insolvent on October 22, 1959, and that the mortgage executed on that day by Great Western was for a fair and valuable consideration and was not entered into in bad faith or for the purpose of hindering, delaying or defrauding its

creditors. These findings are not clearly against the weight of the evidence. In such case, the judgment will not be disturbed. Lyons v. Robson, Okl., 330 P.2d 593.

The judgment of the trial court is affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and DAVISON, JOHNSON, WILLIAMS, IRWIN and BERRY, JJ., concur.