2010 OK CIV APP 142

**In re the Marriage of Joey Dale DILBECK, Petitioner/Appellee,**

v.

**Dina Jo DILBECK, Respondent/Appellant.**

**No. 106,885.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Nov. 8, 2010.

Lawrence A. Martin, Cleveland, OK, for Petitioner/Appellee.

Charles J. Kania, James M. Wirth, Kania Law Office, Tulsa, OK, for Respondent/Appellant.

JOHN F. FISCHER, Presiding Judge.

¶ 1 Dina Jo Dilbeck (Mother) appeals a decision of the district court modifying joint custody and awarding custody of the couple's minor child to Joey Dale Dilbeck (Father). On review of the record and the applicable law, we vacate the district court's orders and remand this case with directions.

## BACKGROUND

¶ 2 The parties were divorced in June 2005. There is one child of the marriage, JDD. During the divorce proceeding, the district court appointed a parenting coordinator pursuant to 43 O.S. Supp.2003 § 120.3. The order stated that the Parenting Coordinator's appointment would run for 12 months "unless otherwise ordered by the Court." A pre-decree report by the Parenting Coordinator recommended joint legal custody of JDD and a visitation schedule. The district court adopted these recommendations and included them in the Decree.

¶ 3 The couple continued to live together off and on after the Decree was entered, and after reconciliation failed in September 2007, apparently continued to work with the Parenting Coordinator after the Coordinator's appointment expired. On February 13, 2008, the Parenting Coordinator filed a report with the district court stating that he had met with the parties "since new difficulties have arisen," and that further consultations would be necessary. On March 7, 2008, the Parenting Coordinator filed another report recommending a change in visitation but no change in joint custody. However, the report addressed not only the visitation of JDD, but

also the visitation of minor twins MDD and DRD, born to Mother in 2004. Father is not the biological parent of MDD and DRD, and neither the order appointing the Parenting Coordinator, nor the divorce decree, mention these children. Mother filed an objection to this report *pro se*, arguing that the Parenting Coordinator's appointment had expired, and that the report was "not in the best interests of the children." The district court, by order filed March 20, 2008, re-appointed the Parenting Coordinator. The new order, like the previous order, authorized the Parenting Coordinator "[t]o make recommendations pertaining to the custody of the minor child(ren)" and provided: "Parenting Coordinator's recommendations shall be immediately effective and shall be binding on the parties until further order of the Court."

¶ 4 The Parenting Coordinator's March 7 report was re-filed on March 26. Mother filed a second objection to the report, arguing that the Parenting Coordinator had no authority to make recommendations regarding MDD and DRD, and that the recommendations in the report were not in the best interests of JDD because of "domestic violence and/or neglect by" Father. On May 15, 2008, the district court adopted the Parenting Coordinator's report "as [an] order of the court except as to" MDD and DRD.[1]

¶ 5 On July 10, 2008, the Parenting Coordinator filed another report recommending that Father be given "legal custody" of JDD, and again changing the visitation schedule. On October 6, 2008, Mother filed an amended objection[2] to this report and a motion to remove the Parenting Coordinator arguing:

1. The court had no authority to re-appoint the Parenting Coordinator when no related matter was pending before the court.

2. A court may not, *sua sponte*, institute a proceeding to modify custody or visitation without any application by a party, and based only on the report of a Parenting Coordinator.

---

1. That order also found Father guilty of contempt for failing to comply with a property division order in the Decree, but not guilty as to other unspecified issues.

2. Mother's original objection was filed July 23, 2008, by her previous counsel.

3. A Parenting Coordinator has no authority pursuant to the limitations of section 120.3 to recommend changes in custody or visitation that, pursuant to section 120.4(B), are "binding on the parties until further order of the court."

4. A Parenting Coordinator is specifically restricted to matters that will aid the parties in "complying with the court's order of custody, visitation, or guardianship" pursuant to section 120.3, and this does not include recommending new custody or visitation orders.

5. Mother had discovered that the Parenting Coordinator had been subject to professional disciplinary proceedings in Oregon for an inappropriate relationship with a patient, and had lied to Oregon investigators in this matter. Mother stated that she had no confidence in the Parenting Coordinator's fitness or impartiality, and asked that he be removed.

On October 14, Father filed a motion to adopt the recommendations in the Parenting Coordinator's July report and to modify the Decree. Mother did not file a response to Father's motions.

¶ 6 The district court conducted a hearing on the various outstanding motions on November 6, 2008. The court's rulings made at the conclusion of that hearing were incorporated in a Journal Entry and Order Modifying Custody filed February 17, 2009. The Journal Entry recites that Mother's motions, including her motion to vacate the March 20 order re-appointing the Parenting Coordinator were denied. Father's motion to adopt the Parenting Coordinator's July 10, 2008 report was granted and Father's motion to modify the Decree was granted. The district court awarded sole custody of JDD to Father and "on its own motion" discharged the Parenting Coordinator. Mother appeals.

**STANDARD OF REVIEW**

¶ 7 On review, an order modifying joint custody will not be disturbed unless it is so clearly against the weight of the evidence as to constitute an abuse of discretion. *Daniel v. Daniel*, 2001 OK 117, ¶ 21, 42 P.3d 863, 871. *See Williamson v. Williamson*, 2005 OK 6, ¶ 5, 107 P.3d 589, 591. "An abuse of discretion occurs when a decision is based on an erroneous conclusion of law, or where there is no rational basis in evidence for the ruling." *In re BTW*, 2008 OK 80, ¶ 20, 195 P.3d 896, 908. The appealing party carries the burden of showing that the custody decision was "erroneous and contrary to the child's best interests." *Daniel* at ¶ 21, 42 P.3d at 871. The authority of a Parenting Coordinator is determined by statute. "Statutory construction is a question of law [that] we review *de novo*, without deference to the lower court." *Griffith v. Choctaw Casino of Pocola*, 2009 OK 51, ¶ 7, 230 P.3d 488, 491; *Twin Hills Golf & Country Club, Inc. v. Town of Forest Park*, 2005 OK 71, ¶ 5, 123 P.3d 5, 6.

**ANALYSIS**

¶ 8 Mother's petition in error and brief raise nine assignments of error. However, her arguments concern essentially three issues: the district court lacked jurisdiction to enter the order of March 20, 2008, re-appointing the Parenting Coordinator; a parenting coordinator may not be authorized to change the district court's custody decisions; and, the district court erred in adopting the Parenting Coordinator's July 2008 report.

I. Authority to Re-appoint the Parenting Coordinator

¶ 9 Mother argues that the district court erred in re-appointing the Parenting Coordinator on two bases. The first is that there was no statutory authority to re-appoint a Parenting Coordinator when no current issue of custody or visitation was before the court. The second is that the district court failed to make required findings before re-appointing the Parenting Coordinator.[3] We do not find the district court erred on either basis.

---

**3.** In her petition in error, Mother also argues that the re-appointment of the Parenting Coordinator without a hearing contravened her due process rights. However, this argument is absent from Mother's brief, and we will not consider it. *See Messler v. Simmons Gun Specialties,*

### A. The Statutory Authority

¶ 10 Title 43 O.S. Supp.2003 § 120.3(A) states that:

In any action for dissolution of marriage, legal separation, paternity, or guardianship where minor children are involved, the court may, upon its own motion, or by motion or agreement of the parties, appoint a parenting coordinator to assist the parties in resolving issues and decide disputed issues pursuant to the provisions of the Parenting Coordinator Act related to parenting or other family issues in the case except as provided in subsection B of this section, and subsection A of Section 120.5 of this title.[4]

Mother argues that, once the Decree was entered, the district court had no authority to re-appoint the Parenting Coordinator, absent a motion seeking to change or enforce some portion of the Decree. Father argues that a district court's "continuing jurisdiction" allows it to appoint or re-appoint a Parenting Coordinator at any time during the children's minority, either on motion of a party or *sua sponte*.

¶ 11 In this case, the district court initially determined during the divorce proceedings that the appointment of a Parenting Coordinator was necessary and in the best interests of the child. The order stated that the Parenting Coordinator was appointed for twelve months "unless otherwise ordered by the court." Clearly, the district court contemplated that the services of the Parenting Coordinator might be required beyond the initial twelve-month appointment, and reserved a decision on the matter for later determination. Not only were those services apparently required, but also Mother utilized those services without objection after the Parenting Coordinator's initial appointment expired.

■ ¶ 12 The district court's jurisdiction in this case was invoked when the petition for divorce was filed. 43 O.S. Supp.2002 § 103. The filing of the petition required the district court to make provision for the custody of

JDD. 43 O.S. Supp.2003 § 112. The court did so, but retained jurisdiction to "modify or change any order whenever circumstances render the change proper either before or after final judgment in the action...." 43 O.S. Supp.2002 § 112(A)(3). We read the phrase "any order" in section 112 as including an order appointing a parenting coordinator to facilitate the district court's custody and visitation order.

■ ¶ 13 Mother's interpretation of section 120.3 would give the district court one opportunity to appoint a parenting coordinator or require the court to appoint a parenting coordinator for an unlimited period of time, placing the burden on parents to file for a removal of the parenting coordinator pursuant to section 120.3(G)(2), after the coordinator's services were no longer required. Neither result is practical or calculated to effectuate the intent of the Legislature. This conclusion is consistent with the language of section 120.3(A): "the court may, upon its own motion, or by motion or agreement of the parties, appoint a parenting coordinator...." Therefore we find that the district court had jurisdiction to re-appoint the Parenting Coordinator after the expiration of the initial term of appointment, provided that the conditions required for appointment by section 120.3 existed at the time the appointment was made.

### B. Required Findings

■ ¶ 14 Mother also argues that re-appointment of the Parenting Coordinator was invalid because the district court failed to make the specific findings required by sections 120.3 and 120.5 that "high conflict" existed, that the order was in the best interest of the child, and that the parties could afford to pay for the parenting coordinator's services. The district court's 're-appointment' order of March 2008 includes findings that there is high conflict between the parties and that re-appointment is in the best interest of JDD. The district court's order did not

*Inc.,* 1984 OK 35, ¶ 22 n. 11, 687 P.2d 121, 128–29 n. 11.

4. The exceptions created by § 120.3(B) and § 120.5 deal with the necessity of specific findings when one party opposes an appointment and are discussed later in this section.

specifically include a finding regarding the parties' ability to pay.

¶ 15 Nonetheless, a judgment is presumed to include findings of every material fact necessary to support the judgment. *Carraco Oil Co. v. Roberts*, 1964 OK 194, ¶ 0, 397 P.2d 126, 127 (Syllabus 6). Although the record shows that, on May 15, 2008, the district court held a hearing on the re-appointment of the Parenting Coordinator, the record contains no transcript of that hearing. The record shows that the parties continued to use and presumably pay for the services of the Parenting Coordinator from the time the original order was entered until Mother objected. It is Mother's "undivided responsibility" to provide a record that will demonstrate that the trial court's findings are against the weight of the evidence. *Ray v. Ray*, 2006 OK 30, ¶ 12, 136 P.3d 634, 637. *See Fleck v. Fleck*, 2004 OK 39, ¶ 12, 99 P.3d 238, 240–41 ("appellant must affirmatively show the alleged error from the record on appeal"). Finally, statements in Mother's brief unsupported by the record may not be considered on appeal. *Price v. Price*, 1970 OK 116, ¶ 8, 471 P.2d 894, 895–96. Mother has failed to show, based on this record, that the district court did not consider or make a finding concerning the parties' ability to pay as required by section 120.3.

## II. The Scope of the Parenting Coordinator Order

¶ 16 Mother challenges the scope of the order re-appointing the Parenting Coordinator, arguing that parenting coordinators are not authorized to make recommendations concerning custody, and the district court cannot make any such recommendations immediately effective and binding without a hearing. We find Mother's challenge well-taken for two reasons.

¶ 17 First, section 120.3(C)(3) does not permit a parenting coordinator to "make any modification to any order, judgment or decree." A parenting coordinator may only "allow the parties to make minor temporary

departures from a parenting plan if authorized by the court to do so." *Id.* A change in custody is not a minor temporary departure from the custody provisions of the Decree.

¶ 18 This Court has previously found unconstitutional an order appointing a parenting coordinator that not only authorizes the coordinator to make custody recommendations but also adopts those recommendations in advance "as orders of the court." *See Kilpatrick v. Kilpatrick*, 2008 OK CIV APP 94, ¶ 16, 198 P.3d 406, 410 (holding that an order requiring "that the parenting coordinator's 'recommendations should be observed as orders of the Court'" constitutes an improper delegation of judicial power, and is contrary to the parents' due process rights pursuant to the Oklahoma and United States Constitutions). We find *Kilpatrick* to be persuasive on this issue.[5] Section 120.3 does not permit a district court to authorize a parenting coordinator to change custody previously ordered by the court. However, we can provide Mother no effective relief for the change in custody that occurred between the date of the Parenting Coordinator's "recommendation" to change custody to Father and the district court's subsequent adoption of that recommendation. Nonetheless, we may address that issue "when the challenged event is 'capable of repetition yet evading review.'" *Marquette v. Marquette*, 1984 OK CIV APP 25, ¶ 5, 686 P.2d 990, 992 (citations omitted); *see Federal Land Bank of Wichita v. Story*, 1988 OK 52, ¶ 4, 756 P.2d 588, 589–90. Further, Mother has preserved for review the custody issue after the district court's decision to award custody to Father.

¶ 19 Second, although a parenting coordinator may not effect a change in custody, whether, pursuant to section 120.3, the district court may authorize a parenting coordinator to make recommendations as to custody has not been previously decided. We find that issue can be resolved as a matter of statutory construction and legislative intent.

¶ 20 The Parenting Coordinator Act was adopted in 2001. In its original version, sec-

---

5. Although the district court asked counsel during the November 6 hearing whether any appellate court had considered the Parenting Coordinator Act, no authority was provided. Although

it had been issued, the *Kilpatrick* opinion had not been released for publication and mandate had not been issued when the district court issued its re-appointment order.

tion 120.3 permitted the district court to "appoint a parenting coordinator to hear and decide disputed issues relating to the minor children. . . ." 43 O.S.2001 § 120.3. This language was deleted pursuant to an amendment effective May 28, 2003. As a result, parenting coordinators may only assist "the parties in resolving issues and decide disputed issues . . . related to parenting or other family issues in the case." 43 O.S. Supp.2003 § 120.3(A). The scope of issues within the authority of a parenting coordinator is limited to matters that will aid the parties in:

a. identifying disputed issues,

b. reducing misunderstandings,

c. clarifying priorities,

d. exploring possibilities for compromise,

e. developing methods of collaboration in parenting, and

f. complying with the court's order of custody, visitation, or guardianship.

43 O.S. Supp.2003 § 120.3(C)(1). Obviously, making recommendations as to which parent should have custody is not specifically included within a Parenting Coordinator's authority.

¶ 21 In *Fultz v. Smith*, 2004 OK CIV APP 64, ¶ 12, 97 P.3d 651, 654, this Court interpreted the 2003 amendment as clarifying the original version of section 120.3 to "absolutely and unquestionably" preserve the district court's exclusive jurisdiction to decide matters of child custody in divorce actions. As noted in *Fultz,* section 120.4 was also amended at the same time to conform to the restrictions imposed by section 120.3. In substance, this amendment replaced, "[a] report of the decisions made by the parenting coordinator shall be filed with the court," in subparagraph 120.4(A), with "[a] report of the decisions and recommendations made by the parenting coordinator shall be filed with the court. . . ." Further, a new subparagraph B was added providing: "Any decisions made by the parenting coordinator authorized by the court order and issued pursuant to the provisions of the Parenting Coordinator Act shall be binding on the parties until further order of the court." Consequently, any decision or recommendation by a parenting coordinator must not only be authorized by court order, but also permitted by the Parenting Coordinator Act. The Parenting Coordinator Act only authorizes a parenting coordinator to "allow the parties to make minor temporary departures from a parenting plan if authorized by the court to do so," or aid the parties with respect to the matters described in subparagraphs (C)(1)(a-f) of section 120.3. The parties may further restrict the authority of the parenting coordinator if the coordinator is "appointed pursuant to the agreement of the parties." 43 O.S. Supp.2003 § 120.3(D).

¶ 22 Although a parenting coordinator clearly may assist the parties in identifying issues regarding custody and complying with the district court's custody order, none of the listed functions can be reasonably interpreted as permitting a parenting coordinator to undertake a custody evaluation or make recommendations regarding which parent should have custody. The Parenting Coordinator Act defines a parenting coordinator as "an impartial third party." 43 O.S. Supp.2003 § 120.2(1). This obviously contemplates a non-adversarial relationship between the parents and the parenting coordinator. Authorizing a parenting coordinator to recommend one parent versus another is inconsistent with the role of impartially assisting parents in resolving custody issues related "to parenting and other family issues" specifically described in the Act. *Id.* And, permitting a parenting coordinator to advocate for one party in a custody dispute would undermine the neutrality and impartiality necessary to mediate disputes between the parties.[6] We find that section 120.3 lim-

---

6. The author of one treatise reached the same conclusion. *See* Melissa DeLacerda, *Parenting Coordinator Act,* 4 Oklahoma Practice § 8:2 (West 2010) ("[S]ince passage of the 2003 amendment, parenting coordinators are barred from even making recommendations to the court as to custody, lest their opinions prejudice the trier of fact against deciding the issue solely on the weight of evidence presented at trial."). Comparing Oklahoma's Parenting Coordinator Act with legislation in other states is also instructive. Arizona's statute provides: "The parenting coordinator shall not have the authority to make a recommendation affecting child support, a change in custody, or a substantial change in parenting time." 17B Ariz.Rev.Stat. Rules Fam.

its the scope of authority delegable to a parenting coordinator to that necessary to carry out the functions listed in 43 O.S. Supp. 2003 § 120.3(C)(1)(a–f), and does not include the authority to recommend with whom the custody of a child should be placed. Therefore, we vacate the district court's March 20, 2008, order re-appointing the Parenting Coordinator.

### III. The Custody Decision

▮▮▮▮▮ ¶ 23 Although the scope of the district court's re-appointment order exceeded the parenting coordinator's statutory authority, that does not automatically invalidate the district court's subsequent order on February 17, 2009, awarding custody to Father. Mother argues, nonetheless, that absent the Parenting Coordinator's July report, there is insufficient evidence to warrant a change in custody. To sustain the order changing custody to Father in this case:

> [T]he burden of proof is upon the parent asking that custody be changed from the other parent to make it appear: (a) that, since the making of the order sought to be modified, there has been a permanent, substantial and material change of conditions which directly affect the best interests of the minor child, and (b) that, as a result of such change in conditions, the minor child would be substantially better off, with respect to its temporal and its mental and moral welfare, if the requested change in custody be ordered.

*Gibbons v. Gibbons,* 1968 OK 77, ¶ 12, 442 P.2d 482, 485. The Parenting Coordinator's

July 2008 report contained observations other than his final recommendation as to custody. Neither the order appointing the Parenting Coordinator, nor the entire Parenting Coordinator's report become incompetent because the recommendation exceeded the Parenting Coordinator's statutory authority.[7] Oklahoma case law demonstrates that the district courts may consider, as evidence, observations by the parenting coordinator with respect to matters related to the custody issue.[8] However, after reviewing the transcript of the hearing on November 6, 2008, and excluding the July 2008 report, we agree with Mother. There is minimal evidence in the record even arguably directed at the existence of a "permanent, substantial and material change of conditions." *See id.* Mother and Father were the only two witnesses. Father testified that he believed a change in custody was warranted because Mother accused him of "raping her and her children." Both parents testified about adverse affects of the change in custody on JDD.

¶ 24 This absence of evidence is, in part, due to the focus of the hearing. The hearing focused on whether the court should adopt the Parenting Coordinator's report and recommendation, Mother's legal arguments concerning the validity of the district court's appointment of the Parenting Coordinator, and the scope of authority delegated to the Parenting Coordinator once appointed. Because we have determined that a parenting coordinator may not make recommendations

Law Proc., Rule 74 (2007). North Carolina's statute limits the authority of a parenting coordinator "to matters that will aid the parties" in the same six areas listed in Oklahoma's statute. *See* N.C. Gen.Stat. § 50–92 (2005). Texas has a similar statute. *See* Tex. Fam.Code Ann. § 153.610 (2008). Utah's statute distinguishes between the roles of a "parent coordinator" and a "custody evaluator," and a parent coordinator may "not become a custody evaluator either during or after the term of a parent coordinator's involvement with the family." Utah R.J. Admin. Rule 4–509(7)(B)(i–ii) (West 2010). Colorado's statute also distinguishes between a "parenting coordinator" and an "evaluator," and a "parenting coordinator may not be appointed to serve in the same case as an evaluator...." Colo.Rev.Stat. Ann. § 14–10–128.1(1) (2005). *See id.* § 14–10–127 for the role of an "evaluator."

7. *See, e.g., Kilpatrick,* 2008 OK CIV APP 94 at ¶ 16, 198 P.3d at 410 (invalidating that portion of the parenting coordinator's order making the parenting coordinator's decisions automatic orders of the court, but not invalidating the parenting coordinator's appointment).

8. *See, e.g., Stonebarger v. Wilkins,* 2008 OK CIV APP 35, ¶ 10, 182 P.3d 849, 851 (noting parenting coordinator's report regarding father's attitude); *Kilpatrick* at ¶ 7, 198 P.3d at 408 (noting parenting coordinator's testimony regarding possibility of effective communication between parents); *Eimen v. Eimen,* 2006 OK CIV APP 23, ¶ 4, 131 P.3d 148, 150 (noting parenting coordinator's "report that the boys preferred the convenience of living at Father's home," and that there was "no indication that Father was unduly influencing the boys against visitation with Mother").

as to custody, we find insufficient evidence in this record to show a substantial, material change in circumstances. Consequently, the order changing custody cannot be affirmed. We therefore vacate the district court's February 17, 2009, journal entry and remand this case for further proceedings consistent with this Opinion.[9]

### IV. The Removal of the Parenting Coordinator

¶ 25 Finally, Mother argues that the district court erred in denying her "motion to remove the parenting coordinator." The order Mother has appealed clearly removes the Parenting Coordinator, although it does so on the court's "own motion." A parenting coordinator may be removed either on the court's own initiative, pursuant to section 120.3(G)(1), or on the motion of either party pursuant to section 120.3(G)(2). Mother's brief does not explain why the former is not an acceptable substitute for the latter, and we find no error.

### CONCLUSION

¶ 26 The district court had jurisdiction to re-appoint the Parenting Coordinator in this case. However, the Parenting Coordinator Act does not authorize a parenting coordinator to change a court's custody order or make recommendations regarding to whom custody of a minor child should be awarded. Father has failed to meet his burden of proof showing that a change in custody was warranted. The district court's March 20, 2008, order is vacated, the February 17, 2009, order is reversed, and this case is remanded with directions to deny Father's October 14, 2008 motion.

¶ 27 **VACATED, IN PART, REVERSED IN PART AND REMANDED WITH DIRECTIONS.**

WISEMAN, C.J., and BARNES, J., concur.

---

9. Because of this ruling, we need not address Mother's procedural challenges to the November 6, 2008, hearing.