2015 OK CIV APP 67

**Zachary Conan WILSON,**
**Plaintiff/Appellee,**

v.

**Valerie Jo FRANEK,**
**Defendant/Appellant,**

and

**State of Oklahoma ex rel., Department of Human Services, Third–Party Defendant.**

No. 112,722.

Court of Civil Appeals of Oklahoma,
Division No. 1.

July 31, 2015.

Zachary Conan Wilson, Enid, Oklahoma, Pro se Plaintiff/Appellee.

Julia C. Rieman, Gungoll, Jackson, Box & Devoll, P.C., Enid, Oklahoma, for Defendant/Appellant.

ROBERT D. BELL, Judge.

¶ 1 In this child custody matter, Defendant/Appellant, Valerie Jo Franek (Mother), appeals from the trial court's order awarding sole custody of the parties' minor child to Plaintiff/Appellee, Zachary Conan Wilson (Father), and granting expanded visitation to Mother. Mother contends the custody determination was a clear abuse of discretion and not in the minor child's best interests. We affirm the trial court's custody and visitation order.

¶ 2 The minor child was born September 27, 2012, and has resided with Mother since her birth. Father filed a paternity action requesting the determination of his paternity. Once his paternity was determined, Father requested that he be awarded joint custody of the child and visitation. Mother's response requested sole custody of the child and that Father be granted reasonable visitation. Mother also sought child support from Father. The State of Oklahoma, *ex rel.* the Department of Human Services (DHS) filed a cross-petition requesting an income assignment against Father for past and future child support because Mother received state aid to help support the child.

¶ 3 During a hearing on August 26, 2013, Mother was granted temporary custody of the child. Father was granted visitation two

(2) hours of his choosing every Tuesday and Thursday. In November 2013, Mother filed a notice of proposed change of the child's residence from Enid, Oklahoma, to Prescott, Wisconsin. Father objected to the relocation of the minor child's residence.

¶ 4 The custody trial was held March 13, 2014. Mother testified she moved to Enid, Oklahoma, to live with her mother and stepfather. She testified that she was attending college when she became pregnant. She finished one semester and then began working full time. After the child was born, Mother stated she desired to move back to Wisconsin where she would have family support and could pursue her education. While working in Oklahoma, Mother relied upon her mother for child care. Mother admitted she did not ask Father or the paternal grandmother to provide daycare or to babysit the child when Mother or maternal grandmother were unavailable. Instead, Mother relied on friends to babysit the child. Mother's evidence showed Father passed the hair follicle test, but failed the UA test for marijuana. Father testified that the UA was a false positive reading and that he was not currently using marijuana.

¶ 5 The evidence demonstrated that Father held five different jobs since the child's birth, but remained continuously employed. Father admitted he successfully completed probation on a 2010 criminal charge for knowingly concealing stolen property, but that he had no legal problems that would impact his ability to properly care for the child. He explained his mother and many aunts would assist him with the care of the child.

¶ 6 The primary issue of contention between these parties was Father's two-hour court-ordered visitation on Tuesdays and Thursdays. Father expressed his desire to cooperate with court ordered visitation. He testified Mother and the maternal grandmother denied him his court ordered visitation on several occasions. Mother testified that Father changed the times of his visitation at will, without any accommodation for Mother's work schedule or family plans. Father testified he sometimes changed the times of visitation due to work obligations.

Father produced Facebook postings showing that Mother maintained a very active social schedule and often went out drinking and partying with friends. We understand that having a contentious relationship is difficult but a child is now involved. The parties need to "grow up" and focus on the best interest of the child.

¶ 7 At trial, the maternal grandmother testified both parties were good parents. She also described an altercation between her and Father which involved the police. The maternal grandmother stated she denied Father visitation with the child because he attempted to exercise visitation earlier than planned. Maternal grandmother admitted the altercation probably would not have occurred if she had allowed Father to see the child.

¶ 8 The evidence presented at trial included text messages between the parties which demonstrated their immaturity and bitterness towards each other. These texts also showed some attempts by the parties to reasonably communicate with regard to visitation exchanges of the child.

¶ 9 At the conclusion of trial, the trial court made numerous findings, including the finding that Mother "did not attach importance to" the court's temporary visitation order awarding Father two (2) hours every Tuesday and Thursday. The court found:

> On one occasion, [Mother] demanded that [Father] meet her in Stillwater, on another in OKC, on a third she refused because her family was in town, and on a fourth she and her mother refused. When he objected and arrived anyway at his requested time, police were called, and he was reported as a trespasser. Based on these incidents, this court doubts that she would have any respect for an order from an Oklahoma court once she relocates to Wisconsin.

Based on these findings, the court concluded:

> Given that each parent's ability to nurture and provide a stable home for [the child] appear to be equal, this court has an obligation to place custody in the parent demonstrating the most stability, the willingness to comply with this court's orders,

and the willingness to make the child available to the noncustodial parent. It is clear that mother attaches no importance to this court's orders and will not make [the child] more available to Zachary than necessary. It is in the best interest of [the child] that legal custody be granted to Zachary.

¶ 10 To the extent Mother remained in Oklahoma, the court granted her generous visitation on alternating weeks, from 6 p.m. Sunday until the following Sunday at 6 p.m. The court further ordered that the other parent will be the first choice for daycare. In the event Mother moved to Wisconsin, Mother was granted expanded month long visitations. When the child begins kindergarten, the court granted Father custody during the school year, and granted Mother custody during the summer months. Mother now appeals from the trial court's custody determination.

¶ 11 In this action concerning the custody of a minor child of unmarried parties, the trial court is vested with the discretion to determine which parent should have custody of the child. 43 O.S.2011 § 109.2. In an initial custody determination, the trial court's paramount consideration is the child's best interests. *Daniel v. Daniel,* 2001 OK 117, ¶ 21, 42 P.3d 863, 871; 43 O.S.2011 § 109.1. "On appeal, this Court will not disturb the trial court's judgment regarding custody absent an abuse of discretion or a finding that the decision is clearly contrary to the weight of the evidence." *Daniel* at ¶ 21. As the appealing party, Mother has the burden to show the trial court's decision is erroneous and contrary to the child's best interests. *Id.*

¶ 12 On appeal, Mother contends the trial court abused its discretion in awarding Father sole custody of the minor child. She asserts this award was contrary to the clear weight of the evidence of the minor child's best interests. Specifically, Mother argues Father should not have sole custody of the child due to his past criminal behavior, angry outburst towards maternal grandmother and his prior drug use.

¶ 13 We will give deference to the trial court's determination of controversial evidence because the trial court had the opportunity to observe the demeanor and hear the witnesses' testimony and determine the credibility of the testimony. *Manhart v. Manhart,* 1986 OK 12, ¶ 9, 725 P.2d 1234. After reviewing the trial transcript, the pleadings in the record, the documentary evidence, and the trial court's specific findings in its order, we find the weight of the evidence supports the trial court's conclusion that it was in the child's best interest to award Father primary physical custody and to grant Mother expanded visitation.

¶ 14 Although Mother was the primary caretaker of the child since birth, Father exhibited an enhanced interest in the child's welfare and demonstrated his willingness to cooperate with any visitation order entered by the court. Father also appeared to be the best custodial parent to foster and encourage visitation with Mother, as the non-custodial parent. We are not saying Mother may not move out of state for any type of permanent status. She may, just without the child. Moving out of state with the child would place an undue hardship on the child's relationship with Father. Based on this record, we find Mother failed to sustain her burden of proving that Father was unable to care and provide for his child or that his behavior was in any way detrimental to his child's health, welfare and best interests. Accordingly, we hold the trial court's custody and visitation order is supported by the clear weight of the evidence and is not an abuse of discretion. The trial court's custody order is therefore affirmed.

¶ 15 AFFIRMED.

GOREE, P.J., and BUETTNER, J., concur.