SWINEY v. VILLANUEVA



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:SWINEY v. VILLANUEVA

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 SWINEY v. VILLANUEVA
2021 OK CIV APP 37
Case Number: 119050
Decided: 07/30/2021
Mandate Issued: 09/30/2021
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2021 OK CIV APP 37, __ P.3d __

 

IN RE THE MARRIAGE OF:

NORAH MARIE SWINEY, Petitioner/Appellee,
v.
ALFREDO VILLANUEVA, Respondent/Appellant.

APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA

HONORABLE OWEN EVANS, TRIAL JUDGE

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

Keith A. Jones, Anastasia Mahoney, KAJones Law, PLLC, Tulsa, Oklahoma, for Petitioner/Appellee,

Brad K. Cunningham, CONNER & WINTERS, Tulsa, Oklahoma, for Respondent/Appellant.

THOMAS E. PRINCE, JUDGE:

¶1 Respondent/Appellant, Alfredo Villanueva ("father") and Petitioner/Appellee, Norah Marie Swiney ("mother") are the parents of one minor child, R.S.V., born July 17, 2013. Father has had supervised visitation of the parties' child since the divorce trial, which took place during 2016. Father sought a modification of child support and visitation in the trial court and, after a two day trial, the trial court denied the majority of father's requested relief. The trial court modified child support in accordance with a stipulation entered by the parties, found father guilty of contempt for his willful failure to pay child support, and denied the request to allow unsupervised visitation. The finding of guilt for contempt is affirmed. The order modifying child support is affirmed. The order denying father's motion to modify visitation is reversed and the matter is remanded for a hearing on modification of visitation.

BACKGROUND

¶2 The parties were married and living in the State of Texas until they separated. While pregnant, mother moved to the Tulsa, Oklahoma area and ultimately sought a dissolution of marriage in Oklahoma. After a three day trial, the trial court awarded mother full custody of the parties' child and made extensive findings regarding father's behavior and living conditions. The trial court held:

The Court denies Father's request for unsupervised visitation in Dallas at this time. Through his own actions, he has not established the trust needed for the Court to believe that he would make appropriate decisions and that he would change his pattern of abusive behavior. He needs to prove this before he has unsupervised visitation and before the child is sent to Dallas for visitation. He needs to have serious psychological therapy in which he resolves his issues. Until that happens, he is not a good candidate for unsupervised visitation and the child shall not be sent to Dallas.

R. at 8. The parties' Decree of Dissolution of Marriage was filed on September 28, 2016. Father filed his first Motion to Modify Visitation and Child Support the following month, on October 13, 2016.[1] Before the matter proceeded to trial on the motion to modify filed by father and the contempt action filed by mother, father was sanctioned by the trial court for failure to cooperate in discovery. On May 29, 2019, the trial court granted mother's request for sanctions and dismissed father's motion to modify as to child support. On August 16, 2019, the trial court granted a judgment for sanctions in favor of mother against father in the amount of $10,000.00. In addition, the trial court awarded mother attorney fees in the amount of $11,650.00 for fees incurred during the discovery process, which resulted in sanctions. The matter proceeded to trial on February 26, 2020, and February 28, 2020. At trial the parties' Parenting Coordinator testified and when asked about the findings made by the trial court after the first divorce trial, the following exchange occurred:

Q. Okay, to your knowledge, has he had serious psychological counseling to deal with those issues?

A. No. And I have, in the course of the PC sessions, suggested the names of some very competent therapists here who could, one, do the therapy, and also testify and make themselves available in court.

Q. All right. To your knowledge has he followed that advice or suggestion?

A. If he has, I have not been informed of it.

Q. All right.

A. I do not -- I don't think he has.

The Parenting Coordinator testified that as long as father attends events with his family north of Tulsa, he did not feel like supervised visitation was necessary. The father testified that he had been attending therapy since 2012 with David Terpstra.

¶3 During trial the parties stipulated to the income numbers for the child support computation and that the child support obligation would be modified effective May 1, 2019. R. at 389, Tr. of 2/26/20 at page 128; R. at 390, Tr. of 2/28/20 at pages 41-43. The parties submitted closing arguments during May of 2020, and the trial court issued its orders on August 18, 2020.

¶4 Regarding the issue of visitation, the trial court stated that:

Respondent's Motion to Modify, as it relates to visitation is denied. A permanent, material and substantial change of circumstances (the Gibbons standard) was not proven by a preponderance of the evidence. The conditions detailed by Judge Bruce, in the Decision of Separate Maintenance, which Respondent must meet before his visitation is normalized have not been met.

R. at 226-227. Notwithstanding that finding by the trial court, the court did modify the supervised visitation order in two respects. First, the trial court no longer required visitation to be supervised by the paternal grandmother. Second, supervised visitation could take place in Tulsa or Kansas City. The trial court also found father guilty of contempt for failure to pay child support and entered a judgment in the amount of $31,229.25 against him. The trial court modified child support but did not require mother to share in visitation expenses.[2] This appeal follows.

STANDARD OF REVIEW

¶5 Child custody and visitation matters are matters of equitable cognizance. Acox v. Acox, 2000 OK CIV APP 136, ¶2, 18 P.3d 363, 363-364. The Court reviews custody decisions for an abuse of discretion. Wilson v. Franek, 2015 OK CIV APP 67, ¶11, 355 P.3d 863, 865. In this matter, however, the issue raised by father is whether the trial court appropriately applied the Gibbons standard for modification of custody to his request for modification of visitation. The authority granted to the trial court to modify child custody or visitation orders is set forth in 43 O.S. §112. Questions of statutory interpretation and implementation are reviewed de novo. Bank of Oklahoma, N.A. v. Miller, 2017 OK CIV APP 48, ¶4, 403 P.3d 389, 391. "De novo review involves a plenary, independent, and non-deferential examination of the district court's rulings of law." Independent School Dist. No. 2 Tulsa County v. Oklahoma Tax Commissioner, 2018 OK CIV APP 49, ¶4, 419 P.3d 1281, 1283-1284.

¶6 In a contempt proceeding questions of fact will not be reviewed. Kerr v. Clary, 2001 OK 90, ¶18, 37 P.3d 841, 845. Child support matters are addressed to the legal discretion of the trial court and will not be reversed absent a showing of abuse of discretion. In re the Marriage of Morgan, 2019 OK CIV APP 5, ¶28, 438 P.3d 837, 839-840. An abuse of discretion is "discretion employed on untenable grounds or for untenable reasons, or a discretionary act which is manifestly unreasonable." Patel v. OMH Medical Center, Inc., 1999 OK 33, ¶20, 987 P.2d 1185, 1194.

ANALYSIS

Standard for modification of visitation

¶7 The trial court denied father's motion to modify visitation because, according to the trial court, father did not sustain his burden of proof under the Gibbons standard. In Gibbons v. Gibbons, 1968 OK 77, 442 P.2d 482, the Court, after reviewing numerous decisions, articulated the burden of proof required when a parent seeks to modify a child custody order. The Court stated that:

the burden of proof is upon the parent asking that custody be changed from the other parent to make it appear: (a) that, since the making of the order sought to be modified, there has been a permanent, substantial and material change of conditions which directly affect the best interests of the minor child, and (b) that, as a result of such change in conditions, the minor child would be substantially better off, with respect to its temporal and its mental and moral welfare, if the requested change in custody be ordered.

Id. at 485. In Gibbons, the mother relied on a change in her circumstances to justify modification of custody from the father to her. Id. at 487. However, the Court disagreed that a change in her circumstances alone would satisfy the test. The Court recognized that "this boy would be at least as well off, insofar as his temporal welfare and his mental and moral welfare are concerned, in the custody of his father as he would be in the custody of his mother, even in her changed situation." Id. at 487. It is clear that under Gibbons, all things are not equal and the burden of proof to overcome in order to justify modification of custody from one parent to the other is a high one. In Boatsman v. Boatsman, 1984 OK 74, 697 P.2d 516, the Court stated, with regard to modification of child custody, that: "The 'change of circumstances' requirement is an attempt to accord some degree of finality to factual and legal determinations made in divorce and custody matters, which if absent would lead to constant relitigation of matters already determined. Its application is akin to res judicata." Id. at 519.

¶8 The question here, raised by father, is whether the Gibbons standard must be satisfied in order to justify modification of visitation. That question was recently addressed by the Court in Robinson v. Robinson, 2020 OK CIV APP 68, 480 P.3d 924. Robinson involved an attempted modification of visitation by the father. The parties were divorced in 2017 and both lived in Enid, Oklahoma at the time of their divorce. Id. at 925. After the divorce, the father moved to Dallas, Texas and worked for Southwest Airlines. He sought a modification of visitation due to his change in location and work schedule. Id. at 925. The Court recognized that the Gibbons test is well established when the issue involved is a change of custody from one parent to the other. Id. at 926. However, the Court stated that:

Our inquiry has also shown that the Supreme Court has never required that the Gibbons test be utilized in these circumstances, or in any parent-parent case involving a change in visitation schedule. There may be circumstances in which some form of the Gibbons test would be appropriate. By example, a substantial change in the amount of visitation or changing visitation from weekly to a block of time in the summer, has the potential to be disruptive to the child's life and may be equated to a change in custody requiring the Gibbons test. Equally concerning would be a situation where a younger child would go from home visitation to being required to fly cross-country.

Id. at 930. The Court concluded that the Gibbons test does not apply to a situation where a father is seeking to modify visitation after a good-faith relocation rendered the existing visitation schedule impractical and, furthermore, the requested changes were relatively minor. Id. at 930.

¶9 This Court, likewise, has not located a case under Oklahoma law that automatically applied the Gibbons test when a request has been made by one parent to modify the visitation schedule with another parent. In addition, it appears that Gibbons has been applied to situations which require a substantial and permanent change in circumstances which directly affects the children in the custodial parent's home before the burden would require the non-custodial parent to demonstrate that the children would be substantially better off if the requested change in custody were made.[3] If the Gibbons standard is applied to all actions involving modifications of visitation, then there could be a myriad of situations where it would be impossible for a non-custodial parent to seek and obtain a modification of visitation in the best interests of their child or children.

¶10 Title 43 O.S. §112(A)(3), grants the trial court the authority to modify visitation whenever the circumstances render the change proper. In all custody and visitation matters the best interests of the child or children involved is the paramount consideration. Scocos v. Scocos, 2016 OK 36, ¶5, 369 P.3d 1068, 1070. The trial court, at the time of the dissolution of marriage/legal separation trial, set forth conditions for father to satisfy before his visitation could become unsupervised and normalized. Under these circumstances it was error, as a matter of law, for the trial court to apply the Gibbons test to father's request for modification of visitation. The question involved here is not whether there has been a substantial, material, and permanent change in circumstances which directly affect the child and that the child would be substantially better off if a change in visitation were made. There has been no evidence presented to indicate that mother is acting in a manner that is directly affecting the health or welfare of the child. The question here is whether father has corrected his living situation and improved his mental health to the extent that he can have a normal visitation schedule. The matter is remanded for a hearing for the trial court to consider the best interests of the child and, in light of the particular circumstances of this case, to determine whether father has corrected the conditions that led to the imposition of his supervised visitation schedule.[4]

Contempt

¶11 The trial court found father guilty of contempt for failure to pay child support in accordance with the child support order included in the parties' Decree of Dissolution of Marriage. Father was ordered to pay child support in the amount of $1,216.32 per month, but he consistently paid support in the amount of approximately $220.00 per month. The record reflects that even though father's income fluctuated, he still paid approximately the same amount for child support each month. Questions of fact in contempt matters are not reviewed on appeal. Kerr v. Clary, 2001 OK 90, ¶18, 37 P.3d 841, 845. The finding of guilt for contempt is affirmed.[5]

Modification of Child Support

¶12 At trial the parties entered into stipulations regarding the income figures to be utilized for the child support computation and the date of commencement for the modified amount of child support. There was no objection to Petitioner's Exhibit 45, which was the Child Support Guideline Computation that was adopted by the trial court. At trial, after the trial court accepted the stipulation for the new child support computation, the following transpired:

THE COURT: All right. That is Petitioner's 45, and it is admitted. Now, for the purposes of modification, is that the first effective date of the modification? Do we agree on that? I'm trying to paw through the file at the same time I talk.

MR. KEITH: April of 2019 --

THE COURT: Yes, sir.

MR. KEITH: -- would be the first month that the new sum should be used as child support.

MR. FUNDERBURK: Yes.

THE COURT: We all agree with that.

MS. WILKINS: It was filed the 23rd, April.

MR. KEITH: 23rd of April?

MR. FUNDERBURK: His child support's due the 24th. So we're going to use --

MS. WILKINS: I believe the current order is the 5th or --

MR. FUNDERBURK: May 1st.

MR. KEITH: Okay May 1st will be the start date.

THE COURT: Effective May 1 of 2019. All right. Thank you.

¶13 On appeal father argues that the trial court committed error by dismissing his October 2016 Motion to Modify Child Support as a discovery sanction and that, as a result, child support should have been modified back to the original filing date. This Court disagrees. First, this issue was not raised in the trial court at the time of trial. "Matters not first presented to the trial court are generally excluded from consideration by an appellate forum." Jernigan v. Jernigan, 2006 OK 22, ¶26, 138 P.3d 539, 548. There are no compelling reasons to deviate from the general rule that bars from review issues raised for the first time on appeal. Second, the parties entered into a stipulation regarding the date that the new child support order would go into effect. Father did not follow the procedure required in order to withdraw a stipulation. There are two types of stipulations. Some are tantamount to contracts and may only be withdrawn on grounds for nullifying a contract. McFarling v. Demco, Inc., 1976 OK 15, ¶13, 546 P.2d 625, 630. The other type of stipulation is procedural in nature and withdrawal is not permitted without the consent of the opposing party, except by leave of court upon good cause shown. Id. at 630. McFarling set forth factors for a trial court to consider when a party seeks to withdraw a stipulation. Id. at 630-631. Father never attempted to withdraw the stipulation regarding the commencement date for the new child support amount. Consequently, the decision of the trial court on modification of child support is affirmed.

Visitation costs

¶14 Father requested an order which would require mother to pay a portion of the costs he incurred in order to visit with the parties' child. Title 43 O.S. §118D states:

G. Transportation expenses of a child between the homes of the parents may be divided between the parents in proportion to their adjusted gross income, so long as the payment of such expenses does not significantly reduce the ability of the custodial parent to provide for the basic needs of the child.

"A long-standing rule of statutory construction is that "may" generally denotes permissive or discretional, while "shall" is ordinarily interpreted as a command or mandate". Independent School District #52 v. Hofmeister, 2020 OK 56, ¶35, 473 P.3d 475, 491. Title 43 O.S. §118D utilizes the word "may" as opposed to "shall". The language of the statute grants the trial court the discretionary authority to apportion transportation expenses for visitation. The trial court's refusal to apportion transportation expenses does not constitute an abuse of discretion. The decision regarding modification of child support is affirmed in all respects.

CONCLUSION

¶15 The decision modifying the terms of supervised visitation (i.e. that it may occur in Tulsa or Kansas City and that any adult member of father's family or a professional supervisor may supervise the visits) is affirmed pending a hearing on remand. The decision denying father's motion to modify visitation is reversed and the matter is remanded for a hearing based on what appears to be in the best interests of the child. The orders finding father guilty of contempt, modifying father's child support obligation, sanctioning father, attorney fees related to sanctions, and visitation expenses are all affirmed.

GOREE, P.J., and MITCHELL, J., concur.

FOOTNOTES

[1] Father subsequently filed Respondent's Amended Motion to Modify Visitation Schedule and Child Support on June 27, 2017. Mother filed an Application for Citation for Contempt against father on April 5, 2018, claiming that father had not complied with the child support orders issued by the trial court. On April 23, 2019, father filed his second motion to modify child support claiming that his income had substantially decreased since the entry of the prior child support order.

[2] Father's child support obligation was reduced from $1,216.32 per month to $655.12 per month primarily as a result of the fact that child care expenses were no longer incurred by mother in the amount of $800.00 per month. Father's gross income was set at $4,500.00 per month and mother's gross income was set at $5,438.00 per month. R. at 20, 22-26, and 212-216; Petitioner's Exhibit 45.

[3] See for example Mullendore v. Mullendore, 2012 OK CIV APP 100, 288 P.3d 948, where the father in that case had made substantial improvements in his parenting abilities. Id. at 951. However, the Court stated that "the fact pattern here is essentially identical to the facts in Gibbons: non-custodial parent sought a change in custody showing non-custodial parent's circumstances had changed." Id. at 952. The Gibbons Court found that evidence insufficient and reversed the order because the mother failed to demonstrate that the child would be substantially better off with her if custody were modified. Id. at 952.

[4] Mother argues in her Answer Brief that father should be bound by the Gibbons test because he referenced Gibbons in his motion to modify visitation. Child custody and visitation matters are far too important to be resolved by rigid adherence to technical rules. See White v. White, 2007 OK 86, ¶10-¶12, 173 P.3d 78, 80-81. In addition, Rule 4 of the Rules for District Courts of Oklahoma is not self-executing. Id. at 79-80. The trial court has discretion to have a motion deemed confessed if the motion is not supported by a list of authorities. This Court will not impose a more stringent burden of proof on a litigant than required by law when the facts and law do not warrant it.

[5] In his reply brief, father discusses In re the Marriage of Mitchell, 2021 OK CIV APP 17, __P.3d __. This Court has reviewed that case and the record. The holding today is not inconsistent with the holding in the Mitchell matter.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2012 OK CIV APP 100, 288 P.3d 948, MULLENDORE v. MULLENDORE
Discussed
 2015 OK CIV APP 67, 355 P.3d 863, WILSON v. FRANEK
Discussed
 2017 OK CIV APP 48, 403 P.3d 389, BANK OF OKLAHOMA v. MILLER
Discussed
 2018 OK CIV APP 49, 419 P.3d 1281, INDEPENDENT SCHOOL DIST. NO. 2 TULSA COUNTY v. OKLAHOMA TAX COMMISSIONER
Discussed
 2019 OK CIV APP 5, 438 P.3d 837, IN RE THE MARRIAGE OF MORGAN
Discussed
 2020 OK CIV APP 68, 480 P.3d 924, IN RE THE MARRIAGE OF ROBINSON
Discussed
 2021 OK CIV APP 17, 491 P.3d 759, IN RE THE MARRIAGE OF MITCHELL
Cited
 2000 OK CIV APP 136, 18 P.3d 363, 72 OBJ 25, ACOX v. ACOX
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 2001 OK 90, 37 P.3d 841, 72 OBJ 3071, KERR v. CLARY
Discussed at Length
 1968 OK 77, 442 P.2d 482, GIBBONS v. GIBBONS
Discussed
 2006 OK 22, 138 P.3d 539, JERNIGAN v. JERNIGAN
Discussed
 2007 OK 86, 173 P.3d 78, WHITE v. WHITE
Discussed
 1976 OK 15, 546 P.2d 625, McFARLING v. DEMCO, INC.
Discussed
 2016 OK 36, 369 P.3d 1068, SCOCOS v. SCOCOS
Discussed
 2020 OK 56, 473 P.3d 475, INDEPENDENT SCHOOL DISTRICT # 52 v. HOFMEISTER
Discussed
 1999 OK 33, 987 P.2d 1185, 70 OBJ 1353, Patel v. OMH Medical Center, Inc.
Discussed
 1984 OK 74, 697 P.2d 516, Boatsman v. Boatsman
Discussed
Title 43. Marriage
 Cite
Name
Level

 43 O.S. 118D, Computation of Child Support Obligation - Percentage of Combined Gross Income of Both Parents - Computation for Each Parent Required - Transportation Expenses - Support Order - Summary Form - Social Security Numbers Required
Discussed
 43 O.S. 112, Care, Custody, and Support of Minor Children
Discussed


 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA